**LOGAN, Estate of, In re.**

Probate Court, Putnam County.

Decided June 28, 1955.

## OPINION

By WARREN, J.

This matter came on to be heard on the "Application" of Cozy M. Logan, the widow and surviving spouse of Lloyd Logan, deceased. Briefly, the application alleges that applicant and decedent resided on and rented a certain 80 acre farm for the past thirty-four years, paying cash rent; that the farm was rented from Frank Logan, who died September 27, 1929; that said Lloyd Logan, deceased, and Cozy Logan, his wife, made lasting and permanent improvements on the farm; that in 1953 decedent sowed fifteen acres of wheat and sublet twenty acres of grass to neighbors for the purpose of clipping it in 1953 and making hay in 1954; and applicant prays that she be decreed possession of the premises under the alleged cash rental lease for the farm year 1954 and for the entire lifetime of the life-tenant, Margaret E. Logan. No further pleadings were filed. On hearing, counsel appeared on behalf of all interested parties.

The estate of Lloyd Logan is being administered in this court. The question to be determined is what rights, if any, the administratrix of the Lloyd Logan estate has in the purported oral lease of the 80 acres occupied by Lloyd Logan at the time of his death. The Probate Court has jurisdiction of this matter.

Sec. 2101.24 GC provides:

"Except as otherwise provided by law, the Probate Court has jurisdiction." * * *

"(C) To direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates."

"(M) To direct and control the conduct of fiduciaries and settle their accounts.

"Such jurisdiction shall be exclusive in the probate court unless otherwise provided by law.

"The probate court shall have plenary power at law and in equity fully to dispose of any matter properly before the Court, unless the power is expressly otherwise limited or denied by statute."

What the pleader calls the pleading is not decisive. (See Speidel v. Schaller, Ohio, 55 NE 2, 346.)

**Sec. 2721.05 R. C.** provides:

"Any person interested as or through an executor, administrator trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto in any of the following cases:

"(A) To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;

"(B) To direct the executors, administrators, trustees, or other fiduciaries to do or abstain from doing any particular act in their fiduciary capacity;

"(C) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

The undisputed evidence discloses that about the time of his marriage in 1919 Lloyd Logan rented the eighty acre farm in Union Township, Putnam County, Ohio, from his father, Frank Logan, for cash rent of $480.00 per year; that Lloyd Logan and Cozy Logan lived continuously on the farm from 1919 until February 2, 1954, at which time Cozy Logan moved out of the house at the request of Joseph Logan, attorney-in-fact for Margaret Logan, the life-tenant of the premises. From time to time the cash rental was increased by mutual agreement of the parties; that cash rental on the basis of $1,000.00 per year was paid for said premises for 1953.

Frank Logan died testate on September 22, 1929, devising the eighty acre premises to his son, Lloyd Logan, subject to the life use of said premises by Margaret Logan.

Lloyd Logan died Dec. 6, 1953. Before his death, Lloyd Logan in the summer of 1953, sublet to two neighbors twenty-one acres of grass which was clipped by them in 1953 preparatory to making hay in 1954. In the Fall of 1953, Lloyd Logan sowed fifteen acres of wheat on the premises. During his tenancy on the farm, Lloyd Logan among other improvements added a new room to the dining room and kitchen, built a 1000 bu. bin, resided the granary, and rebuilt and reroofed the hen-house.

Mrs. Cozy Logan on cross-examination testified that about three years before he died, when the Lloyd Logans intended to move off the farm, Frank Logan stated if they would stay they could have the farm for $480.00 cash rent per year for as long as Margaret Logan would live.

At the request of Joseph Logan, Cozy Logan had a sale and vacated the house on February 3, 1954. Joseph Logan rented the house in February, 1954, for $20.00 per month thereafter.

For the year 1953 Cozy Logan settled with Joseph Logan, attorney-in-fact for Margaret Logan, the life-tenant, on a cash rent basis of $1,000.00.

There is no evidence of any objections on the part of Margaret Logan at the time that the twenty-one acres was clipped in the Summer of 1953 for hay in 1954, nor when Lloyd Logan put the

wheat out in the Fall of 1953 before his death. The oral lease for cash rent and holding over from year to year was an indivisible contract for the entire eighty acres. The tenant, Lloyd Logan, was not renting fields, he was renting the entire farm for cash by the year. Whether a contract is entire or divisible depends generally upon the intentions of the parties, and this must be ascertained by the ordinary rules of construction considering not only the language of the contract, but, also, in cases of uncertainty, the subject matter, the situation of the parties and circumstances surrounding the transaction, and the construction placed upon the contract by the parties themselves.

See 9 O. Jur. pp 471, 472.

A contract for cash rent on farm land is an indivisible contract. See 86 S W (2) 808.

The vacation of the house did not work a forfeiture of the lease and a resulting loss of the crops.

Forfeiture of lessee's interest in lease of farm upon which crops are growing is not favored. See Warren v. Driscoll, 242 NW 346 (Minn) cited in 51 C. J. S. page 677, footnote 64.

Vacating the house did not constitute an abandonment of the premises. The wheat crop had been sown at the time of the death of Lloyd Logan.

"A mere removal of the tenants' residence from the land has been held not to constitute an abandonment of the crop." 51 C. J. S. 349 p. 1040.

By moving out of the house the tenant did not surrender up the premises to the landlord for she still retained the tenant's interest in the farm land. Lloyd Logan had put out fifteen acres of wheat and had rented twenty-one acres for hay. The oral contract is not divisible, and the estate of Lloyd Logan is entitled to the landlord's share of the crop for 1954 and is liable for the rent for 1954.

"In order to constitute an abandonment or surrender of the premises, which on acceptance by the landlord will constitute a surrender of the lease by operation of law, there must be such a relinquishment by the tenant as will justify an immediate resumption of possession by the landlord, and, where there is such a relinquishment, there is a sufficient abandonment or surrender. Although it has been said that the lessee may abandon the lease by words or equivalent acts, a surrender cannot be implied by operation of law when the tenant retains possession, as tenant, of the leased premises, or any material portion of them.

"In order to constitute an abandonment or surrender of the leased premises, there must be a real or symbolical delivery of the possession of the entire property. Delivery of possession as security for delinquent rent is not of itself sufficient to constitute an abandonment. Likewise, there is no surrender by the lessee where he keeps the key and leaves a portion of his goods on the premises; where he merely surrenders the key to the lessor for a temporary purpose; where he surrenders the key on demand of a sheriff attaching his personal property; where he retains the key for several days after

the expiration of the term, and after refusal of the landlord to accept it, for the purpose of removing trade fixtures; where the lessee is forcibly ousted through an improper resort to the courts; where, after removal by warrant, he is prevented by the lessor from reentering the leased premises; where he merely fails to make any answer to an offer by the landlord to cancel the lease; where he moves from the premises and back within a few days without notice to the landlord; where there is a mere temporary absence of two months but no default in payment of rent; where he fails to commence using the premises for the purposes for which they were leased for an indefinite time, there being no showing that the delay is inequitable; or where he fails to build a logging road or railroad under a lease of premises 'for a logging road or railroad to be thereafter constructed.'

"An assignment of a lease or a subletting of the premises is not an abandonment of the lease, but an assertion of right to the lease, and a surrender will not be implied on proof that the lessees had dissolved partnership, and that an unauthorized person had tendered the lessor the key, and nothing more." (51 C. J. S. 125 p. 718)

Lloyd Logan's estate is the hold-over tenant in 1954 and as such, not having made a new agreement for rent, is liable to pay the same rent as for the previous year.

"A tenant who holds over and retains possession of the demised premises after the expiration of a term, without having made any new or different agreement as to rent, subjects himself to a renewal or continuance of the liability to pay rent as fixed by the terms and conditions of the prior lease. The liability for rent may exist for a period equivalent to that of the original term, for a year, a term of less than a year, a month, during the period that the premises are retained by the tenant, or during the continuation of the tenancy, and until its termination. A statute requiring a landlord to give his tenant notice in order to enforce an automatic renewal clause in the lease does not change the tenant's liability for rent as a holdover. However, a statute providing that a notice of termination of a farm tenancy must fix a date specified in such statute has been held to control the period for which a farm tenant is liable for rent as a holdover."

(See 52 C. J. S. 471 p. 210.)

24 O. Jur. 327 p. 1075. "Where a tenant holds over without agreement, and the landlord elects to hold him for another term, the tenant is liable for rent during another term and the amount will ordinarily be the same as that payable during the term prior"

The cash rental paid each year was for the calendar year. There is no evidence that the premises were rented on other than a calendar year.

Lloyd Logan, had he lived, would have been the holdover tenant for 1954 as he had put out part of the crops and the cash rental contract was not divisible. The fact that he died in December 1953 does not alter the leasehold relationship as the death of either lessor or lessee does not, of itself, terminate a lease.

"In the absence of a vocenant otherwise providing, as a general rule a lease is not terminable by the death of the lessor or the lessee." (See 51 C. J. S. 92 p. 659)

The Court finds that Lloyd Logan's estate was holdover tenant for 1954 and as such owes Margaret Logan, the life-tenant, the sum of $1000.00 cash rent. However, Joseph Logan, attorney-in-fact, for Margaret Logan is holding, pending this proceedings, the following sums which belong to the estate of Lloyd Logan, for crops sold and other receipts from the farm in 1954; $116.60, hail insurance less premium, $1,482.96, corn and beans, $308.74, oats, $220.00 house rent.

Cozy Logan, as administratrix, is entitled to all the landlord's share of the crops of said farm in 1954.

There is evidence that an oral contract between Frank Logan and Lloyd Logan sometime prior to 1929, was intended as a continuous contract of lease during the entire lifetime of Margaret Logan who still survives. Such a lease is unenforceable as being within the Statute of Frauds. The holdover lease terminated at the end of 1954.

Sec. 1335-04 GC provides:

"No lease, estate or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law."

24 O. Jur. 54 p. 789 provides:

"Although an agreement purporting to be a lease, because of some defect therein, does not create a legal estate or term of the duration designated in the agreement, it is well settled that from entry under such an agreement, or at least from entry and payment of rent, a tenancy at law may be implied. This rule is said to apply to a lease 'void for any cause'. This rule seems to apply to leases for more than three years which are not in writing as required by the Statutes, although in most cases involving leases for a shorter term it has not been recognized." * * * "The duration of the tenancy which is implied depends, at least ordinarily, upon the terms as to the payment of rent. Thus where possession is taken, or where possession is taken and rents are paid, there is created a tenancy from year to year, or month to month, depending upon the terms as to payment of rentals. An entry under a lease for a term of years at an annual rent, void for any cause, and payment of rent under it, have been said to create a tenancy for a year, or from year to year, even though the annual rent is payable quarterly, or monthly, or at shorter periods."

The estate of Lloyd Logan cannot recover for the permanent improvements made on the buildings as there is no evidence of a contract by the landlord to pay for the same, nor of a request of the landlord to make the improvements.

24 O. Jur. 188 p. 921.

"In the absence of any agreement between the parties, there

is no obligation on the part of the lessor to pay lessee for improvements erected by the latter upon the demised premises even though the improvements are such that by reason of their annexation to the freehold they become a part of the realty. and cannot be removed by lessee."

An entry may be drawn accordingly allowing exceptions to each party herein.