**BRACKEN, Admr., Appellant, v. WAGNER, Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23726.   Decided May 9, 1956.

William C. Bracken, for appellant.
Ernest G. Beres, for appellee.

## OPINION

By SKEEL, J:

This appeal comes to this Court from a final order of the Probate Court of Cuyahoga County, removing Marie D. Bracken as administratrix

of the estate of Charles M. Egler, deceased. Marie D. Bracken was a niece of the decedent.

The record shows that at the time of his death Charles M. Egler was eighty-one years of age. He died intestate, leaving as next of kin six nephews and nieces who were brothers and sisters in relation to each other. William C. Bracken is the attorney of record for the administratrix and is her husband. Aside from being a lawyer, Mr. Bracken has, for many years past, dealt extensively in real estate in the general vicinity of Bay Village and is a licensed real estate broker.

The record shows that Charles M. Egler, at the time of his death, had bank deposits of more than eighteen thousand dollars and stocks listed on the New York Stock Exchange valued on the market at about one thousand dollars. He owned his home on Ralph Avenue in Bay Village, free and clear of encumbrances, it being appraised by the original appraisers appointed by the Probate Court as of the value of $17,000. There was also a three and one-half acre tract of land in the name of the deceased appraised by said appraisers at sixteen thousand dollars. The testimony in the record is that this property is now worth about $24,000. The record shows that there were no debts or obligations claimed against the estate, except as shown by Bracken. Exhibit No. 3, consisting of funeral expenses, doctors and hospital bills, appraisers fees, the cost of the bond of the administratrix and the like, totaling $1012.24, which, when deducted from the total liquid assets, left a balance of money and stock in the sum of $18,272.15.

In 1937, title to the three and one-half acre tract shown in the inventory was taken in the name of Charles M. Egler, it being the claim of William C. Bracken that he, at that time, by agreement with Egler, negotiated the transaction, was to contribute to the consideration at a later date, and was to have a one-half interest therein, it being agreed that the property was not to be sold without his consent.

On February 16, 1955, Charles M. Egler entered into a contract to sell the three and one-half acre tract to David E. Rattray and his wife for the sum of $16,000, Egler at that time receiving a check in the sum of two hundred dollars as a down payment. Upon learning of this attempted sale between Egler and Rattray, William C. Bracken brought two actions in the Common Pleas Court of Cuyahoga County, one against David E. Rattray, later amended to include his wife as a defendant, seeking to set aside the sale's agreement between Egler and Rattray for the purchase of the three and one-half acre tract by Rattray, alleging that Rattray had full knowldge of Bracken's interest in the property, the other suit being against Charles M. Egler, seeking a declaration that title to the three and one-half acre tract be held in trust by Egler for the plaintiff as to his interest therein and seeking to enjoin a sale of the property.

Charles M. Egler died August 31, 1955 and Marie D. Bracken was appointed administratrix of his estate on September 26, 1955; bond was then filed and letters issued on that date, the application showing the next of kin to be:

Irene M. Roe, Niece, residing at 14623 Shaw Avenue, East Cleveland; Marie D. Bracken, Niece, residing at 29924 West Lake Road, Bay Village;

Paul C. Wagner, Nephew, residing at 2055 Lakeview Road, Rocky River; Phillip W. Wagner, Nephew, residing at 104 Riverview Road, East Lake; Evelyn J. Hartley, Niece, residing at 3320 Oakway Drive, Toledo, Ohio; Margaret C. Wagner, Niece, residing at 1980 East 59th Street, Cleveland.

All of the residents of Cuyahoga County consented to the appointment of the administratrix except Margaret C. Wagner. Appraisers were appointed, one being Ernest G. Beres, the attorney now of record for the heir who filed this motion seeking the removal of the administratrix. Ernest G. Beres, after being sworn as an appraiser and participating in the appraisal, certifying that the values set forth in the appraisal were correct to the best of his knowledge, and after he had verified it with his signature, he blotted or scratched lines over his name on the appraisal when it had been left with him in its completed form for the purpose of having Margaret C. Wagner sign a waiver of notice and a consent to its approval. The appraisal set forth the bank deposits, stocks and real property and the appraised value as above set forth, and after describing the three and one-half acre parcel, the following notation was set forth as to the three and one-half acre tract:

"This property was attempted to be sold to one, David E. Rattray and Edith M. Rattray on the 16th day of February, 1955, for the sum of $16,000. This sale was attempted to be escrowed at the Land Title Abstract and Trust Co., but this escrow was never completed. William C. Bracken brought an action in Common Pleas Court, being Case No. 668937, against Charles Egler to establish a trust and another action against David E. Rattray, being Case No. 668890 for cancellation of the agreement and deed attempted to be made by Charles Egler."

These cases are still pending without change as originally filed.

The motion seeking to remove Marie D. Bracken, as administratrix, was filed October 26, 1955, by Margaret C. Wagner, a sister, by her attorney, Ernest G. Beres, the grounds for such removal being alleged as "conflicting and adverse interests in this litigation in that her husband, who is the attorney representing this estate in Probate Court, is at the same time the plaintiff and plaintiff's attorney in two law suits against this estate in the Court of Common Pleas." On page 43 of the bill of exceptions, Margaret C. Wagner was asked if she requested her lawyer to file this motion, to which she answered, "No, I didn't."

This motion came on for hearing on November 17, 1955, and on November 28, 1955, an order granting the motion removing Marie D. Bracken as Admininstratrix of said estate was entered, ordering her to file a final account in ten days.

It is the claim of the appellant that the court, in ordering the removal of Marie D. Bracken as Administratrix, committed error prejudicial to her rights, said order being contrary to law and against the evidence.

The evidence discloses that Marie D. Bracken was appointed at the request of all the brothers and sisters except Margaret C. Wagner. Mrs. Bracken testified that she knew of the cases filed by her husband, one against the claimed purchaser of the three and one-half acre tract to prevent the sale on the grounds alleged in the petition, and the other

case against Charles M. Egler, seeking a judicial declaration of her husband's claim of a one-half interest in such property. Both cases were pending at the time of her uncle's death. She said her husband had prepared the papers in the estate for her but had given no other advice about the estate and that no advice had been necessary.

Margaret C. Wagner put in evidence "Complainant's Exhibit A" which was an offer on the part of William C. Bracken to pay the heirs of Egler (not the estate) $16,000 for the three and one-half acre tract which offer was made after the inventory and appraisal had been signed by the appraisers, the offer being for the same price agreed upon in the contract between Rattray and Egler and also the same amount for which the property had been appraised.

The "Court" introduced the appraisal as its exhibit (Exhibits A-1 to A-4 inclusive), in the case (it is so marked in the record), which with the other evidence shows that there was not the slightest probability that the real estate of the deceased would ever become a necessary asset in the estate or subject to any actions whatsoever by the administratrix, except to cause its appraisal, to be considered in determining the inheritance tax, and to record the transfer of the real estate to the next of kin, as required by law. After paying all debts, there was still over eighteen thousand dollars in stock and cash on hand, and from the face of the record, the total inheritance tax would not exceed one thousand dollars.

There was introduced into evidence an agreement signed by all the heirs, including Margaret C. Wagner, whereby the heirs agreed to sell the homestead of the decedent to John Yurcik and his wife for $18,000. This agreement in no way was subject to any action on the part of the administratrix of the estate. This property was valued by the appraisers at $17,000.

Dr. Paul Wagner, one of the heirs and brother of both Margaret C Wagner and Mrs. Bracken, testified that Mrs. Bracken was the choice of the brothers and sisters, except Margaret C. Wagner; that the three and one-half acre parcel was worth more than $16,000, probably nearer twenty-four or twenty-five thousand dollars, and that he knew about Mr. Bracken's claim to a one-half interest in this tract and that an action was pending against his uncle before they agreed that Mrs. Bracken should serve as administratrix. The court then asked the following questions, after the lawyers had concluded their examination of the witness:

"Did you understand that Mr. Bracken was personally asserting the right to the ownership of the property or part of it?

"Dr. Wagner: Yes I knew that. We knew that and we felt that he had some right in the property. All the heirs knew except Margaret. 1 never talked to Margaret. She won't talk to us." It is clear from the foregoing facts that the property involved in the two lawsuits cannot in any way become a part of the property to be administered in the estate of Charles M. Egler, deceased. There are only four or perhaps five sections of the Probate Code imposing duties upon an administrator with respect to real estate owned by a decedent at the time of his death where a sale is not needed to pay debts or taxes (first, an inventory and

appraisal must include all the property, including real estate, §2115.02 and §2115.17 R. C., second, the payment of inheritance tax as provided in Chapter 5731 and particularly by §5731.17 R. C., third, to provide the necessary certificate of transfer to be filed of record to show the succession of such real estate to the next of kin, §2113.61 R. C., fourth, to seek authority to carry out a contract for the sale of land entered into but not completed during the life of the deceased, subject to the limitations of §2113.48 R. C., fifth, to cancel such a contract with the consent of the other party as provided by §2113.49 R. C.), where the administrator is a proper party and where the real estate of the decedent may require his attention.

There are other sections of the Probate Code, such as **Chapter 2123** R. C., providing for the "determination of heirship" and **Chapter 2127** R. C., dealing with sale of lands in which §2127.02 R. C., provides:

"As soon as an executor or administrator ascertains that the personal property in his hands is insufficient to pay all the debts of the deceased, together with the allowance to the widow and children for twelve months, and the costs of administering the estate, he shall commence a civil action in the probate court or the court of common pleas for authority to sell the decedent's real estate."

The undisputed facts in this case, however, show without question of doubt that these sections can have no application to this estate. Here the real estate passes directly to the heirs at law. The administration of the personal property can be completed without involving the real estate in any way. The administratrix owes no duty to defend claims against the title to real estate passing to the next of kin by the intestate laws where such property is not needed to close the estate. Such fiduciary is not a proper party in such an action. She is not required by law to enter litigation where the heirs are in dispute concerning their rights against the claim of a third person to an interest in the real property of the decedent where a judicial conclusion of the dispute is not necessary to, and does not involve assets of the estate subject by law to administration. Unless a statute requires it, there is no justification for making the fiduciary of the estate a party in an action dealing with property not subject to administrative procedure.

In 11 R. C. L., under the title "Executors and Administrators," paragraph 327, at page 284, it is said:

"Ordinarily the defense of the title to realty is for the heirs and not the administrator."

and in 9 R. C. L., under the title "Descent and Distribution," paragraph 113, page 113 in part provides:

"The heirs may sue to recover descended realty before distribution. They may maintain ejectment, especially where there are no debts and hence no necessity for administration. And it has been held that the heirs may sue to compel a trustee of real property to account and to set aside sales of the trust property made by the trustee to himself, at least where there has been no administration. Generally no action with reference to the realty can be brought by the administrator. He cannot maintain ejectment, or any possessory or real action, in law or equity, for the recovery or maintenance of possession or title, except when the

known and acknowledged property of the decedent is insufficient for the payment of debts, or where he is duly authorized by an order of the probate court having jurisdiction in the premises, or where the statute expressly or impliedly authorized him to sue. Nor can he sue for an injury to the freehold, such, for example, as an injury resulting from obstructing the flow of water, or for a trespass committed after the ancestor's death. He cannot maintain an action for slander of title, or to quiet title, or to remove a cloud or encumbrance thereon, nor sue to compel a reconveyance of land pursuant to a contract with the intestate."

In the case McMahan et al, v. Davis et al, 19 C. C. 242, 10 O. C. D. 467, the action was to foreclose a mortgage lien without asking for judgment on the note. The third paragraph of the syllabus provides:

"3. In proceedings to foreclose a mortgage after the death of the mortgagor, when no money judgment is demanded, the administrator of a deceased mortgagor is not a necessary party."
and on page 246, the court says:

"Second: Is there a defect of parties in not making the administrator of the deceased mortgagor a party? There is no money judgment sought, only an accounting in equity. In such case the administrator is not a necessary party. The plaintiff is not seeking a judgment against the administrator, or against the estate, but the proceeding is one to enforce the lien upon the property created by the deceased mortgagor in his life time. In such actions, if no judgment against the estate is demanded, the executor or administrator is not a necessary party. Bliss Code Pleading, Section 102; Story Eq. Pleading, Section 196. 'The only necessary parties defendants are the mortgagor, or his heirs, devisees, grantees, or assignee, for these are the only persons interested in the equity that is to be foreclosed.' Phillips on Code Pleading, Section 508. The general rule is that the personal representatives are necessary parties only when a personal judgment for a deficiency is sought against the estate. Whittaker's New Anno. Ohio Civil Code (1896) page 44, note under §5006 R. S."

This principle of law is founded on the fact that by statute, unless otherwise directed, only those who have an interest or whose interests are involved in the subject of the action are necessary parties.

In the case of **Overturf, Admr. v. Dugan et al, 29 Oh St 230,** the Supreme Court of Ohio clearly states that the interests of an intestate in real property passed directly, upon his death, to his heirs. In paragraph one of the syllabus the court said:

"1. The lands of an intestate descend at once to his heir, and the legal title vests in him, subject to the right of the administrator to sell the same for the payment of the debts of the intestate, in the manner prescribed by law."

In the case of Haussman v. Burnham, reported in 21 American State Reports 74 (59 Conn. 117, 1890), in dealing with this question, the court said, beginning at page 82:

"As the complaint is framed, however, and as the record now stands, we think there are serious difficulties in the way of advising the superior court to render a judgment for the plaintiff. We do not see how, since the decease of Mr. Haussman, we can properly advise that the

deed from Mrs. Haussman to the attorney be reformed so as to join Mr. Haussman as a grantor with his wife, and permit and direct him to execute the same; nor that the alleged cloud be removed from the plaintiff's title by a decree commanding the defendants to convey to Mr. Haussman such title or interest in the property as they may have.

"The heirs at law of Mr. Haussman are now the only parties properly entitled to relief. They have not since his death been made parties to the action, and are not regularly before the court or legally asking for relief. It is true that the death of Mr. Haussman has been suggested on the record, and that his administrator has entered to prosecute the action. We do not see how he is entitled in his representative character to relief, or to a judgment for the benefit of the heirs. If it was an action at law to recover the possession of the estate under General Statutes, §1012 GC, there might be no difficulty; but the statute is in express terms limited to an action of disseisin, and we do not feel justified in extending it by analogy, though the object sought to be obtained in this case is similar to that provided for in the statute."

We come now to a consideration of the reasons stated by the court as the basis for removing Marie D. Bracken as administratrix in this estate. The primary reason seems to have been because she did not disclose her husband's activities and claims with respect to the three and one-half acre parcel of vacant real estate prior to her appointment, and that as administratrix, she would be a necessary party adverse to her husband's claims. It was clear that the estate would be completely administered without in any way involving title to any of the real estate of the decedent and for that reason, she would not be either a proper or necessary party in the pending litigation. It is equally true that at the time the motion was heard, the administratrix had proceeded to a point where her remaining duties could be concluded and the estate closed without the necessity of legal advice except as to routine matters. There were, therefore, no grounds which would justify her removal at the time the entry was made.

The obligation of the applicant for letters of administration of an estate to disclose to the court at the time of the making of the application the activities of her husband with the decedent, involving some of the property recorded in the name of the decedent, must depend on whether there is, in fact, a controversy in which the estate could be involved, and, if so, whether the circumstances would mitigate against an honest and impartial administration of the estate. It does not appear that there was the slightest attempt to withhold information which would affect the choice of the majority of the heirs who, with full knowledge of the facts, requested the appointment of one who, under the statute, was, if qualified, entitled to preferential consideration.

The court in its opinion refers to three activities of William C. Bracken as imputing to his wife as her attorney alleged conflicts of interest. The two lawsuits will be first considered. Having concluded that the administratrix would not be a necessary or proper party to this litigation on the authorities cited, can it be said that the prosecuting of these cases by Marie D. Bracken's husband could affect her qualifications to administer the assets of this estate? In the first place,

the suit to set aside the agreement of the decedent to sell the property to the Rattrays, if the evidence is to be followed, such action, if successful, would be a benefit to the heirs because the agreed price in the contract with the Rattrays was $16,000 while one witness testified the property (which evidence was not challenged), was worth about $24,000. The other lawsuit, wherein Mr. Bracken seeks to establish his claim to a one-half interest in the three and one-half acre tract, which had been filed prior to the death of the decedent, and to the date of this hearing in the trial court, had never been revived against the heirs and until that is done, must lay dormant on the docket of the Common Pleas Court. No issues are here presented which in any way could involve the duties of an administrator.

The statutes above referred to, dealing with the right of an administratrix to cancel an incomplete contract for the sale of real estate entered into before the death of the decedent, does not permit of an adversary proceeding. The administrator can act only if the other party agrees. Contractual rights are not lost by the death of one of the contracting parties unless the contract is for personal services. **Sec. 2113.48 R. C.**, authorizing the completion of such a contract, is likewise limited to the consent of the other contracting party. Here again, when considering the evidence which is to the effect that the property is much more valuable than that for which the decedent agreed to sell it and, therefore, unless compelled to do so by the purchaser, an administratrix who attempted to invoke the provisions of this section would be doing so against the best interests of the heirs who now have the legal title to the property described in the contract.

The court also finds some justification in the removal of the administratrix because it is said Mr. Bracken helped to sell the former residence of the decedent. Whether or not he negotiated this sale is not disclosed in the record but it would seem to be no concern of the Probate Court where the heirs all agreed, as they had a legal right to do, in selling that which was theirs upon any terms agreeable to them. The estate and the administratrix were not in the slightest concerned with this transaction.

The court admitted into evidence an offer of Mr. Bracken to purchase the three and one-half acre tract from the heirs for $16,000, the same price agreed upon in the contract between the decedent and Rattray, and its value returned by the appraisers. The only possible conclusion that can be drawn from this offer is that it was an offer of settlement in which Mr. Bracken agreed to waive any claims for one-half interest if the heirs would sell him the property for the same consideration. Of course, such an agreement must have been conditioned upon the sale to Rattray being set aside. In all events, Margaret C. Wagner refused to accept the offer so it came to naught. Such offer in no way could possibly involve the administration of the estate.

The court finally deals at length with what developed at the hearing about the conduct of Ernest G. Beres in being sworn as an appraiser, and after making the appraisal with the other two appraisers appointed by the court, and certifying that such appraisal was just, then when the appraisal was left with him in its finished form to have Margaret C.

Wagner waive notice and consent to its approval, scratched his name therefrom. That such conduct would have justified the trial judge in taking action against Mr. Beres is clear. He did not do so but somehow finds such conduct as mitigating against either Mr. or Mrs. Bracken and in some fashion supporting the removal of Mrs. Bracken as administratrix. We find no support for this conclusion.

For the foregoing reasons, the order of the Probate Court, removing Marie D. Bracken as administratrix of the estate of Charles M. Egler, is contrary to law and not supported by the evidence and such order is, therefore, reversed and the cause remanded with instructions to vacate such order.

Exceptions. Order see journal.

KOVACHY, PJ, HURD, J, concur.