[Cite as *Hometown Apts., L.L.C. v. Hoffa*, 2022-Ohio-2707.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | |
|---|---|
| HOMETOWN APARTMENTS dba LAUREL SPRINGS APARTMENTS | : |
| | : |
| | : Appellate Case No. 2021-CA-43 |
| Plaintiff-Appellant | : |
| | : Trial Court Case No. CVG2101281 |
| v. | : |
| | : (Civil Appeal from |
| KENNETH HOFFA (DECEASED), ALL OTHERS | : Municipal Court) |
| | : |
| | : |
| Defendant-Appellee | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of August, 2022.

. . . . . . . . . . .

LAURENCE A. LASKY, Atty. Reg. No. 0002939, 3461 Office Park Drive, Kettering, Ohio 45439
         Attorney for Plaintiff-Appellant

KENNETH HOFFA, 20 Old Yellow Springs Road, Apt. 2, Fairborn, Ohio 45324
         Defendant-Appellee, Pro Se

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Hometown Apartments, LLC, dba Laurel Springs Apartments ("Laurel Springs") appeals from a judgment of the Fairborn Municipal Court that denied Laurel Springs's request for restitution of Kenneth Hoffa's apartment to Laurel Springs. Hoffa was deceased when the complaint was filed. As such, the complaint was a nullity, and the trial court did not err in denying restitution. The judgment of the trial court is affirmed.

{¶ 2} Laurel Springs filed a complaint in forcible entry and detainer against "Kenneth Hoffa (Deceased) and all others" on October 19, 2021. Count One of the complaint alleged that Hoffa's rent was in arrears in the amount of $605, that Laurel Springs had served notice upon Hoffa three or more days before commencing the action to vacate the premises, and that Hoffa "refuses to leave said premises and surrender possession thereof." Count Two of the complaint requested "a money judgment" in the amount of $605 "plus back rent and damages and all other rent and damages up to and including the time the Defendant vacates the premises." A copy of the Notice to Leave the Premises was attached to the complaint, along with an affidavit of Pam Chris, the owner and manager of Laurel Springs.

{¶ 3} The trial court scheduled a hearing on the complaint before a magistrate on November 3, 2021. At the hearing, counsel for Laurel Springs informed the court that Hoffa was deceased. The following exchange occurred:

> [THE MAGISTRATE]: * * * I looked at the complaint prior to coming
> in today * * * and I noticed that – we can't properly serve the deceased
> individual as the defendant. So do you have any other additional

information that you can provide to –

* * *

[COUNSEL FOR LAUREL SPRINGS]: Your Honor, * * * this is obviously not a case of first impression. As the court knows, under Ohio law, there's no requirement of personal service on count one of an eviction case.

The statute says regarding the notice, quote, it simply says the three-day notice should be left, quote, where the defendant may be found. * * *

Number two, regarding service on the eviction component, which is all we're here for, we're not seeking a money judgment

So it is our position and there's case law out of three different districts, including Franklin County, and I believe Montgomery County as well, in these cases which indicates if you are simply seeking restitution of the premises and you're not seeking a money judgment and they do go on and discuss these kinds of cases, then there's no requirement of any service other than door service.

Because here's our circumstance here. Our position is that there's stuff left in the apartment. There may or may not be conflicting interest regarding relatives who may be contacting my client saying we want the items.

And therefore we filed the eviction so that we can legally get a court order to allow us to retake the apartment.

And * * * when relatives call us, we're free and fair to tell them here's the move out date, if you would like the items, they'll be placed out front.

So we go above and beyond in each one of these cases but it's our position that there's no requirement of initiating an action through Probate Court because we're not going to be presenting a bill to any estate. We just simply want the premises back.

**{¶ 4}** The magistrate advised counsel that he would "like to see" that there had been "some notice or some attempt to notify" next of kin or an executor or administrator of Hoffa's estate. The magistrate asked counsel to present relevant case law and proposed continuing the matter for a week. The magistrate then proceeded to hear the testimony of Laurel Springs owner/property manager Pam Chris

**{¶ 5}** Chris testified that Hoffa was 72 years old and had just been terminated from Lowe's when he died. She stated that she had learned that Hoffa had a son, Kenneth Hoffa Jr., who resided in Florida, with whom she had not spoken. Chris testified that she had not been served with anything suggesting that an estate had been opened on Hoffa's behalf or contacted by any lawyers regarding his apartment, but she had been contacted by Hoffa's relatives; his sister, Diane Hoffa, wanted Hoffa's belongings from the apartment. Chris stated that Hoffa's rent had been $535 per month and that he had resided in the premises pursuant to a lease. She testified that he had not paid rent for October 2021, and she identified the notice to leave the premises that she had placed on the apartment door. Chris testified that she did not know Hoffa's date of death, but that his apartment was "infested * * * with gnats because of his body being in there." She

testified that she had "biohazard" clean the premises, but that the smell was still there because of all of his belongings and rotten food.

{¶ 6} On November 16, 2021, the magistrate found that the Laurel Springs had issued a proper notice to vacate within the required time, and that Hoffa was in default as a result of his death and non-payment of rent. The decision found that "[a] decedent's death terminates his will to continue a tenancy by implication of law," citing *Sutherland v. Moore,* 10th Dist. Franklin No. 88AP-482, 1988 WL 96231 (Sept. 15, 1988), quoting *Say v. Stoddard*, 27 Ohio St. 478 (1875). On this basis, the magistrate recommended that Laurel Springs be granted restitution of the premises and recover the cost of this suit. In an amended decision issued on November 30, 2021, the magistrate noted that "Defendant(s) did not appear [at the hearing] although served with summons and complaint."

{¶ 7} On December 1, 2021, the trial court declined to adopt the magistrate's decision, finding an error of law. The trial court took "judicial notice" that Laurel Springs had named a deceased person as the defendant and concluded that, "[o]bviously, service cannot be made on a deceased person. The proper party Defendant is either the administrator or executor of the deceased's estate or the deceased's next of kin." The court granted Laurel Springs 21 days to amend its complaint and noted that its failure to do so would result in the case being dismissed without prejudice at Laurel Springs's cost.

{¶ 8} Laurel Springs filed a notice of appeal on December 8, 2021.

{¶ 9} Laurel Springs asserts the following assignment of error:

THE TRIAL COURT ERRED BY OVERRULING THE MAGISTRATE

AND NOT GRANTING A WRIT OF RESTITUION AND REQUIRING APPELLANT TO SERVE THE COMPLAINT UPON EITHER THE ADMINISTRATOR, OR THE EXECUTOR OF DECEASED'S ESTATE, OR THE DECEASED'S NEXT OF KIN.

{¶ 10} Laurel Springs argues that the trial court "frustrated the underlying statutory purpose of forcible entry and detainer actions," which is to create "an expedited purpose to address the recovery and possession of rental properties."   It also argues that the civil rules regarding service are not applicable to a forcible entry and detainer action and that the court's docket establishes that service was perfected by the posting of the summons and complaint on October 20, 2021.   Laurel Springs argues that there was no requirement for it to provide additional service of any sort.

{¶ 11} Laurel Springs further asserts that the magistrate correctly concluded that the leasehold of a tenant "ceased to exist once he passed away."   Laurel Springs points out that there was no language in the lease that bound any heirs or assigns of the tenant or "extend[ed] any rights or obligations therein" beyond the death of the tenant. According to Laurel Springs, the lease terminated upon Hoffa's death, Laurel Springs was entitled to possession of the premises due to Hoffa's undisputed failure to pay rent, and the trial court erred in mandating that Laurel Springs bring other persons in as parties. Although Laurel Springs suggests that the lease was attached to its complaint, we note that the lease was not attached, and it is not part of record before this court.

{¶ 12} As noted by the Ohio Supreme Court:

"Forcible entry and detainer, as authorized in R.C. Chapter 1923, is

a summary proceeding in which 'any judge of a county court' may make inquiry into disputes between landlords and tenants, and, where appropriate, order restitution of the premises to the landlord." *Cuyahoga Metro. Hous. Auth. v. Jackson* (1981), 67 Ohio St.2d 129, 130, 21 O.O.3d 81, 82, 423 N.E.2d 177, 178. A forcible entry and detainer action is intended to serve as an expedited mechanism by which an aggrieved landlord may recover possession of real property. *Id.* at 131 * * *; see, also, *Haas v. Gerski* (1963), 175 Ohio St. 327, 330, 25 O.O.2d 212, 214, 194 N.E.2d 765, 767. Thus, "[g]iven its summary nature, the drafters of the Rules of Civil Procedure were careful to avoid encrusting this special remedy with time consuming procedure tending to destroy its efficacy." *Jackson* * * * at 131 * * *.

The Ohio Rules of Civil Procedure "prescribe the procedure to be followed in all courts of this state in the exercise of civil jurisdiction." Civ.R. 1(A). The rules are generally applicable to all civil proceedings in Ohio; however, there are exceptions. See Civ.R. 1(C); see, also, *Jackson* * * * at 130 * * *. One such exception provides that the rules, "to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure" in forcible entry and detainer actions. Civ.R. 1(C)(3). * * *

(Footnote omitted.) *Miele v. Ribovich*, 90 Ohio St.3d 439, 441-42, 739 N.E.2d 333 (2000).

{¶ 13} As this Court has noted: " 'An action in forcible entry and detainer is solely a possessory action. * * * It does not determine the title to real property. The gist of the

action is the right to present possession.' " *Bowshier v. Bowshier*, 2d Dist. Clark No. 2012-CA-40, 2013-Ohio-297, ¶ 21, quoting *Haas,* 175 Ohio St. 327, 194 N.E.2d 765 (1963).

{¶ 14} As noted by the Eighth District in *Sherman v. Carlin*, 46 Ohio App.3d 149, 150-151, 546 N.E.2d 433 (8th Dist.1988):

As a general rule, a lease for a term of years does not terminate by operation of law upon the death of the lessee but passes to his personal representative, who becomes bound as assignee for the remaining term. *Mills v. Connor* (1922), 104 Ohio St. 409, 135 N.E. 616, paragraph one of the syllabus; *Becker v. Walworth* (1887), 45 Ohio St. 169, 12 N.E. 1, paragraph one of the syllabus. However, a lease may be so personal in its terms as to manifest the parties' intention that the lease terminate upon the tenant's death. Cf. *Bracken v. Wagner* (App. 1956), 74 Ohio Law Abs. 85, 3 O.O.2d 25, 134 N.E.2d 382; *In re Estate of Logan* (P.C.1955), 71 Ohio Laws Abs. 85, 3 O.O.2d 25, 134 N.E.2d 382; *In re Estate of Logan* (P.C. 1955), 71 Ohio Law Abs. 391, 131 N.E.2d 454. See, also, *In re Estate of Lewis* (Mo. App. 1973), 492 S.W.2d 385; *Goodman v. Jardine* (Fla. App. 1977), 353 So.2d 896.

{¶ 15} Here, the lease is not part of our record. Laurel Springs's representative, Chris, stated that Hoffa had relatives, including a son and a sister. Following the general rule set forth above, and in the absence of any evidence that Hoffa's lease was so personal in its terms as to manifest the parties' intention that the lease terminate upon his

death, we find that the trial court properly concluded that the "proper party is either the administrator or executor of the deceased's estate or the deceased's next of kin," and the court properly instructed Laurel Springs to amend its complaint to name the proper party.[1] Accordingly, Laurel Springs's assignment of error is overruled.

{¶ 16} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J., concurs:

{¶ 17} Although I understand and sympathize with the difficulty this situation imposes upon a landlord, I conclude that if a tenant (really, after death, a former tenant) dies, sanctioning service of a forcible entry and detainer action through the procedure set forth by R.C. 1923.04 and R.C. 1923.06 is simply a "bridge too far." Thus, I concur in the lead opinion.

{¶ 18} R.C. 5321.03 states in pertinent part that "* * * a landlord may bring an action under Chapter 1923 of the Revised Code for possession of the premises if: (1) The tenant is in default in the payment of rent * * *." R.C. 5321.01(A) defines "tenant" as "a person entitled under a rental agreement to the use and occupancy of residential premises to the

---

[1] We note that the matter herein is distinguishable from *Cerise Capital v. Dewberry*, 2d Dist. Montgomery No. 29248, 2022-Ohio-1874. That case involved a forcible entry and detainer action seeking restitution of a commercial premises. This Court dismissed Cerise Capital's appeal from the denial of its request for restitution as moot, determining that "it appears undisputed that the Dewberrys have vacated the commercial property. Because Cerise Capital has been restored to the premises, we cannot provide any meaningful remedy, even if we were to find that any of its assignments of error had merit." *Id.* at ¶ 13. However, Hoffa's belongings apparently remain in the property, and the lease is not before us; as such, we cannot conclude that the matter herein is moot.

exclusion of others."

{¶ 19} R.C. 1923.04 states in relevant part that " * * * a party desiring to commence an action under this chapter shall notify the adverse party to leave the premises * * * three or more days before beginning the action * * * by leaving [the notice] at the * * * premises from which the defendant is sought to be evicted."

{¶ 20} R.C. 1923.03(C) provides in relevant part that "the Clerk of Court * * * shall mail any summons by ordinary mail, along with the complaint * * * to the defendant at the address set forth in the written instructions furnished the clerk * * *." R.C. 1923.06(C) further provides that following the ordinary mail delivery of the summons and complaint, service in a forcible entry and detainer action is completed by compliance with R.C. 1923.06(D). R.C. 1923.06(D)(1)(b)(2)(c) provides that if the summons and complaint cannot be delivered to the defendant or to a suitable person found at the premises, service may be completed by a court bailiff " * * * posting a copy of the summons [and] complaint * * * on the subject premises."

{¶ 21} In this case, the record reflects that the R.C. 1923.04 "three day notice" was left at Hoffa's apartment on October 11, 2021. The forcible entry and detainer complaint was filed eight days later on October 19, 2021. The complaint indicates that Hoffa is deceased. And, since the testimony at the eviction hearing reflects that Hoffa's body was not discovered in the apartment until approximately two weeks after his death, it seems that Hoffa was dead when the three-day notice was served. The record also reflects that on October 19, the Clerk of Court mailed the complaint and summons to the subject apartment using regular mail. Consistent with the complaint, the summons

stated that Hoffa was the defendant and that he was deceased. Finally, the record shows that on October 20, 2021, the court's bailiff posted the summons and complaint on the apartment door. All things being equal, this sequence completed service of process. R.C. 1923.06(G). *See also Machshonba v. Cleveland Metro. Housing Auth.*, 8th Dist. Cuyahoga No. 96811, 2011-Ohio-6760, ¶ 17. But Hoffa's death, in my view, changes the calculus such that it cannot be concluded that service of the forcible entry and detainer action was accomplished.

**{¶ 22}** I reach this conclusion because all of the statutory references to a tenant/defendant contemplate a living person. R.C. 5321.01 defines "tenant" as a "person" with the right to use and occupy a residential premises. Once Hoffa died, he was not a person with such rights. R.C. 1923.04 provides that, before filing a forcible entry and detainer action, the landlord must serve the three-day notice on the "adverse party." R.C. 1923.04 also provides that the three-day notice is to be left at the premises from which the defendant is to be evicted. Upon his death, Hoffa could not be an adverse party nor could he be evicted. Finally, R.C. 1923.06(C) provides that the complaint and summons shall be sent by regular mail to the "defendant." Again, this contemplates delivery to a living person. Since, in my view, service of a forcible entry and detainer action cannot be accomplished on a deceased person, I concur in the lead opinion.[2]

EPLEY, J., dissents:

---

[2] I recognize Laurel Springs's argument that the lease between Laurel Springs and Hoffa was so personal that it terminated on Hoffa's death. This may be so, but the record does not support this conclusion. But, if the situation is such that a lease terminates on the tenant's death, arguably the landlord would not need court intervention to legally regain possession of the premises.

{¶ 23} By design, statute, and rule, a forcible entry and detainer action is summary in nature. The Rules of Civil Procedure are modified for the typical Count 1 of an eviction action – restitution of the premises; for the typical Count 2 – money damages – they are not. *See* Civ.R. 1(C) ("These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * (3) in forcible entry and detainer, * * *[.]"). A hearing on the restitution claim may occur after seven days from service. R.C. 1923.06(H)(1). In contrast, in other civil filings (including claims filed with the request for restitution of the property), a defendant has 28 days to answer the complaint. R.C. 1923.06(H)(2); Civ.R. 12(A)(1). A hearing on the non-eviction claims would not be scheduled until the expiration of those days, if at all.

{¶ 24} The summary nature of eviction actions is evidenced by the service of process instructions. Specifically, R.C. 1923.06(D)(2)(c) states that service is achieved by "posting a copy in a conspicuous place on the subject premises if service cannot be made pursuant to divisions (D)(2)(a) and (b) of this section." The (D)(2)(a) and (b) subsections relate to giving the document to the defendant at the property or leaving the document with another person at the property.

{¶ 25} The (D) section of the statute does not distinguish between a living and a deceased tenant. By contrast, the next sequential section – (F) – details how to evict a deceased manufactured home park resident. Notably, a landlord or owner of a manufactured home lot cannot simply post the complaint in a conspicuous place on the subject premises. Instead, service must be made either (1) on the executor or administrator appointed by the probate court, if known, or (2) on the known spouse and

immediately family members of the decedent, plus service by publication. R.C. 1923.06(F). Presumably this is because a manufactured home resident may have an equitable or ownership interest in the structure on the rented lot of a manufactured home park.

{¶ 26} The forcible entry and detainer statute regarding service of process is clear, unambiguous, and practical. With the addition of the service provisions for manufactured home park residents in 2007, the legislature made a distinction between service of deceased manufactured home park residents and other tenants. *See also* R.C. 1923.04(A) & (C) (providing differing notice requirements for a deceased resident of a manufactured home park and others). We should not graft requirements for service of other deceased tenants into R.C. 1923.06(D) when the legislature has not done so.

{¶ 27} In addition, the cases cited by the majority are inapposite to the case at bar. In *Mills*, 104 Ohio St. 409, 135 N.E. 616 (1922), the decedent/testator procured a 10-year lease for a business property that included, among other things, a "moving picture theater." The lease set out that the lessee could not, without consent of the lessor, sublet any part of the first floor or basement of the premises, or assign the lease. The lease further stated that the first floor and basement could only be used for the purpose of maintaining a theater. It was also provided that all the conditions of the lease should bind the heirs, executors, administrators, successor, and assigns of the parties. Finally, the lessees had the right to re-lease the premises for a further five-year period after the end of the original 10-year term.

{¶ 28} The decedent in *Mills* paid the rent and otherwise complied with all the terms

of the agreement until his death, approximately two years before the expiration of the lease. He left a will which stated that the theater business was to be sold, but if there were legal impediments to its sale, then it was his will that the theater continue operating for "the life of the lease" under the direction of his cousin, with profits being split between family members. The theater continued showing "moving pictures" until close to the end of the original 10-year lease, when the decedent's estate tried to invoke the five-year option contemplated by the lease. The owner of the building declined, and the suit was initiated.

{¶ 29} The court noted that, as a general rule, the representative of a decedent may not carry on the decedent's business after his death unless such authority is specifically granted. It was also clear that the rights of the plaintiff as trustee to operate the business (as appointed by the probate court) were limited to the clear and express language of the will; he had no power as to any other matters connected with the estate. The will only granted the authority for the family to run the theater business until the end of the lease, and it gave them no rights to anything else. It did not even give them the authority to control or use the equipment of the theater after the lease. Therefore, because the right to execute a new five-year lease was not explicitly granted in the will, the lessor did not have to grant a new five-year term to the decedent's family. *Mills* did not involve an eviction action or the requirements for notice and service of summons for any action.

{¶ 30} In *Sherman v. Carlin*, 46 Ohio App.3d 149, 150, 546 N.E.2d 433 (8th Dist.1988), James Holland signed an agreement to rent an apartment for one year

beginning on August 1, 1984. Five days later, he died. The lease agreement provided that its terms were binding on the parties' "heirs, successors, representatives and assigns." After Holland's death, his estate continued to pay rent for five months and then stopped. Sherman, the owner of the property, brought suit. The Eighth District held that, "[a]s a general rule, a lease for a term of years does not terminate by operation of law upon the death of the lessee but passes to his personal representative, who becomes bound as assignee for the remaining term." *Id.* at 150, citing, *e g.*, *Mills*, 104 Ohio St. 409, 135 N.E. 616, paragraph one of the syllabus. The appellate court further recognized that "a lease may be so personal in its terms as to manifest the parties' intention that the lease terminate upon the tenant's death." *Id.* at 150.

{¶ 31} Even without that general proposition of law, the terms of the contract were clear: the "heirs, successors, representatives and assigns" were bound to the terms of the lease agreement. The Eighth District found the contract was clear and unambiguous, so it had to follow the four corners of the contract. Holland's estate was liable for the remaining time on the contract (although there would be a trial to determine if the lessor attempted to mitigate his loss by finding a new renter). Significantly, *Sherman* dealt with money damages, not service of process for restitution of the premises, which is the situation at bar.

{¶ 32} Here, Hoffa's rent was overdue, and he was found deceased in the apartment. Laurel Springs filed suit against "Kenneth Hoffa (Deceased) and all others." The "and all others" is common language so that any unknown occupants would be evicted once the notice is posted on the door pursuant to statute.

{¶ 33} Under the lead opinion, the landlord would have to open an estate in probate court, appoint an administrator, and serve the administrator before gaining the premises back. The Revised Code does not require that process, and there is no case law interpreting the code in that manner. It would be a different situation if money damages were sought; one would not be able to obtain money from a deceased person without first obtaining approval through the probate process. However, that is not the case here. Accordingly, I respectfully dissent.

Copies sent to:

Laurence A. Lasky
Kenneth Hoffa
Hon. Beth W. Cappelli