## NATIONAL MANUFACTURE & STORES CORPORATION v. WHITMAN.

### No. 4240.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1938.

Frederick H. Horlbeck, of Charleston, S. C. (W. B. Cody and Harold Hirsch & Marion Smith, all of Atlanta, and Mitchell & Horlbeck, of Charleston, S. C., on the brief), for appellant.

George L. Buist, of Charleston, S. C. (Buist & Buist, of Charleston, S. C., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and COLEMAN, District Judge.

NORTHCOTT, Circuit Judge.

This suit was instituted in the court of common pleas for Charleston county, S. C., in November, 1934, by the appellee Andrew P. Whitman, here referred to as the plaintiff, against National Manufacture &

Stores Corporation, a Delaware corporation, here referred to as the defendant.

The object of the suit was to recover on a contract and to compel discovery by the defendant of certain operating results of a store of the defendant, of which store the plaintiff had been manager.

After the institution of the suit, the notice of motion for discovery was filed on behalf of the plaintiff, which motion was granted by the presiding judge in the state court, after a special appearance on behalf of the defendant. The defendant appealed from the order allowing the discovery, to the Supreme Court of the state of South Carolina, which court affirmed the order. Whitman v. National Manufacture & Stores Corp., 175 S.C. 464, 179 S.E. 478. Notice of compliance with the order of discovery was filed in the state court and on June 24, 1935, the plaintiff filed his complaint.

The suit was removed to the District Court of the United States for the Eastern District of South Carolina, at Charleston, and set down for hearing on the equity side of the docket. The cause was referred to a special referee who took evidence on behalf of both the plaintiff and defendant and in March, 1937, filed a report making certain findings of fact and finding for the plaintiff in the sum of $4,992.30. On exceptions to the report it was affirmed by the judge below, except as to the basis of computing the amount due the plaintiff, as to which the cause was referred to the special referee for a recalculation.

In June, 1937, the special referee filed a supplemental report fixing the amount due the plaintiff at $3,780.16, and an order was entered giving the plaintiff judgment in that amount. From this order, this appeal was brought.

The defendant corporation owns and operates a chain of retail furniture stores in several of the southern states, with headquarters in Atlanta, Ga. During the fall of the year, 1932, the plaintiff entered the service of the defendant, at Greensboro, N. C., and in March, 1933, signed an employees' agreement which read in part as follows:

"I enter the employ of the National Manufacture and Stores Corporation with the distinct understanding that my employment may be terminated by them on any day, without previous notice, I being likewise at liberty to terminate this agreement in the same manner."

In April, 1933, the plaintiff went to Spartanburg, S. C., as manager of the defendant's store at that place. Under date of May 26, 1933, the head controller of the defendant corporation at Atlanta mailed to all store managers a statement of the condition of its various stores and attached to this statement an offer or agreement to give a bonus to store managers for improved business in their respective stores for the year beginning June 1, 1933, provided they remained in the employment of the corporation for the year.

On his assumption of the management of the Spartanburg store the plaintiff inaugurated a new plan of operations and instituted a number of changes that greatly increased the business. The plaintiff testified that in September, 1933, an officer of the defendant made a proposition to him, over the telephone, that he change his employment with the defendant. This proposition, plaintiff testified, he rejected in the absence of a more definite arrangement.

In the latter part of September, 1933, one B. L. Brown from Atlanta, an officer of the defendant corporation, visited Spartanburg and had a conference with the plaintiff. Brown testified that his visit was made because of a report made by the traveling agent of the defendant, that the plaintiff was not conducting himself properly, at Spartanburg. Brown testified that he sent for the plaintiff to come to his room at the hotel and confronted him with the charges; that he (Brown) told the plaintiff that he had heard from several sources that he, plaintiff, was not giving his entire attention to the business because of "domestic entanglements"; that he had used the petty cash at the store giving his personal due-bills for the amounts used; and that the plaintiff at first denied the charges but finally broke down and admitted them; that plaintiff admitted he had used the money of the store and that a woman, his wife's sister, had followed him from Detroit, that he would like to get the woman out of town, but had no way of doing it and asked that he be given another chance; and that he, Brown, agreed to do this, lending him enough money to arrange his affairs.

The plaintiff testified that the meeting between Brown and himself was a "perfect blank" in his mind and that he did not

even remember "what the conversation was about." Plaintiff further testified that the money loaned him was used to send his wife to Detroit to attend her mother's funeral.

Two or three days after Brown's visit, an officer of the defendant arrived in Spartanburg, having with him a new manager for the store and the plaintiff, after remaining for a month in order to familiarize the new manager with the business, was transferred to Columbia, S. C., in the capacity of sales promotion agent. Shortly after his arrival in Columbia plaintiff received a letter from an officer of the defendant asking for the return of the bonus agreement, as it was then "null and void" in the plaintiff's new capacity. On November 3, 1933, plaintiff replied to this letter, stating:

"Replying to your letter of October 31 regarding the Managers bonus agreement dated May 26, 1933, I am sorry to state that apparently this agreement was mislaid somewhere in Spartanburg, as I do not have it here with me. However if I should happen to come across it I shall send it to you."

Plaintiff remained in the employ of the defendant as sales promoter at various of its stores until the fall of the year 1934. In June, 1934, at the expiration of the year that the bonus agreement as to the Spartanburg store was to run, the plaintiff demanded the bonus. The demand was refused and finally in the fall of 1934, all negotiations as to the bonus having failed, the plaintiff was discharged.

The sole question for our consideration on the appeal is whether the defendant corporation had the right to terminate plaintiff's employment as manager of the Spartanburg store and whether the plaintiff is entitled to recover anything under the bonus agreement.

The findings of the special referee as approved by the judge below are entitled to weight but are only persuasive. As was said by Judge Parker of this court in Hoeltke v. C. M. Kemp Mfg. Co., 80 F.2d 912, 926:

"But as we recently had occasion to point out in Standard Acc. Ins. Co. v. Simpson (C.C.A. 4th) 64 F.2d 583, 588, 'in an appeal in equity we review the facts as well as the law, and the review is a real review and not a perfunctory approval.' The finding of the judge below is persuasive, not controlling; otherwise review on the facts would be a delusion and a snare."

When we come to review the evidence, we are forced to the conclusion that the finding of the referee that the defendant corporation acted in bad faith in terminating the plaintiff's employment as manager of the Spartanburg store was contrary to the great weight of the evidence and had no substantial evidence to support it.

The plaintiff's original contract of employment with the defendant contained the agreements that either party could terminate the contract at will. In the absence of fraud or bad faith such an agreement is binding. The bonus agreement relied upon by the plaintiff as a basis for recovery must be read as a whole and, when so read, clearly shows that the bonus offer was to be effective only in the event the plaintiff completed the year as manager of the Spartanburg store and in the absence of bad faith or fraud this condition in the agreement was a valid one.

The plaintiff's own testimony and the letters he wrote prove conclusively that he was guilty of misconduct while manager of the Spartanburg store. He admitted taking the store's cash and substituting his personal duebills; he admitted in his letters that he had been guilty of misconduct with regard to his domestic affairs; he accepted his transfer in the employment of the corporation in a different capacity than that of manager and expressed his gratitude to the corporation for being given the opportunity to do so; and he admittedly made a false statement in a letter to the corporation to the effect that he did not have the bonus agreement with him, but he would send it in if he should happen to run across it when, as a matter of fact, he had it in his possession at the time. If the plaintiff thought he had any rights under the bonus agreement, he should have been frank in so stating to the officers of the defendant corporation at the time he was notified that they considered the bonus agreement to be null and void.

As was said by the Supreme Court in International Contracting Co. v. Lamont, 155 U.S. 303, 15 S.Ct. 97, 99, 39 L.Ed. 160:

"He entered of his own accord into the second contract, and has acted under it, and has taken advantages which resulted from his action under it, having received

832

the compensation which was to be paid under its terms. Having done all this, he is estopped from denying the validity of the contract. Oregonian Railway Co. v. Oregon Railway Co., [C.C., 23 F. 232], 10 Sawyer, 464. * * * If he had any such rights, and desired to maintain them, he should have abstained from putting himself in a position where he voluntarily took advantage of the second opportunity to secure the work. A party cannot avoid the legal consequences of his acts by protesting, at the time he does them, that he does not intend to subject himself to such consequences."

The plaintiff's testimony before the referee to the effect that his mind was a blank with regard to his interview with Brown and that he could not remember what the conversation was about is on its face unworthy of belief. The plaintiff's refusal to answer on cross-examination questions that were proper and pertinent to the issue in the case was inexcusable and we cannot commend the attitude of his counsel in directing him not to answer these questions. The plaintiff should have been compelled by the judge below upon proper request to make full and complete answers to these questions.

A study of all the evidence leads us to the conclusion that there was no bad faith on the part of the defendant corporation in its dealings with the plaintiff; that the officers of the defendant had a right, under the circumstances, to terminate his employment as manager of the Spartanburg store; and that they treated the plaintiff with great consideration in retaining him in their employ.

Undoubtedly, the plaintiff was a valuable man to the defendant corporation and they kept him as sales promotion agent because it was to their own benefit, yet it does not follow that the plaintiff was entitled to any of the bonus offered for his management of the Spartanburg store. He served only five months of the twelve months necessary to the completion of the bonus contract and his term as manager of that store was terminated because of his own misconduct.

The findings of the special referee should have been set aside and the suit dismissed.

The decree of the court below is accordingly reversed.

Reversed.