ALBIN DROST ET AL. *v.* PROFESSIONAL BUILDING SERVICE
CORP. ET AL.

[No. 172A1. Filed September 12, 1972. Rehearing denied October 27,
1972. Transfer denied May 7, 1973.]

*Fred Schwanke,* of Monticello, for appellants.

*Frederick Cuppy,* of Gary, for appellee Hobart Plumbing
and Heating, Inc., *James Danikolas,* of East Chicago, for ap-

pellee Lake County Glass Company, Inc., and *George Vann*, of Kentland, for appellee Professional Building Service Corp.

SHARP, J.—This action was originally brought by the Plaintiff-Appellee, Professional Building Services Corp. (PBS Corp.) against the Defendant-Appellants, Albin and Edith Drost, owners, to recover for labor and materials furnished under a written contract for the construction of a building on the Drosts' property and to foreclose a mechanic's lien on said property. Appellees, Lake County Glass Company, Inc. (L. C. Glass) and Hobart Plumbing and Heating, Inc. (Hobart P & H), as subcontractors, and Appellant, Lowell National Bank (Bank), as mortgagee, were joined as defendants and all filed cross-complaints in protection of their respective interests. The Drosts filed a counter claim for damages against PBS Corp. for failure to comply with the terms of the contract.

The cause was submitted and tried to the court without the intervention of a jury. The trial court found for PBS Corp. on its complaint and also found for the subcontractors, L. C. Glass and Hobart P & H on their respective cross-complaints. The trial court found that all the above parties had valid enforceable mechanics' liens on the property in question and were entitled to a judgment of foreclosure and sale of said premises to satisfy said liens. The trial court further found that the mortgage of the Bank had equal priority with the several mechanics' liens and the Bank was therefore entitled to share equally in the proceeds realized from the sale of the property. Finally, the trial court found against the Drosts on their counter claim against the PBS Corp. A corrected judgment was entered whereby PBS Corp. recovered the sum of $36,205.82, plus interest together with attorneys' fees in the amount of $5,568.00, plus costs. L. C. Glass recovered the sum of $13,865.00, plus interest along with attorney fees totaling $2,253.74, and Hobart P & H recovered $3,773.39, plus interest, together with $1,350.00 for attorneys' fees.

The Drosts, as owners of said property, and the Bank, as mortgagee, filed a Motion to Correct Errors, which was overruled by the trial court. The sole assignment of error is the overruling of said motion, which contains the following specifications:

(1) The Findings of the trial court are against the weight of the evidence.
(2) The decision and judgment are not supported by sufficient evidence.
(3) The decision and judgment are contrary to law.
(4) The amount of recovery was excessive.

The evidence most favorable to the Appellees and the judgment below is as follows:

The PBS Corp. through its President, Ralph Hansen, met with the Drosts for the purpose of making a number of preliminary drawings in order to determine a contract price for the construction of a building on the Drost property. Preliminary drawings were prepared by Nathan A. Carras, an architect, and were used during the initial negotiations. Based on the drawings, PBS Corp. offered to construct the residence for the Drosts for $130,000.00. On November 9, 1967, a written proposal to this effect was tendered to the Drosts, specifically setting forth various items to be covered under the preliminary proposal and offered to do all the work contained in the proposal for the sum of $130,000.00. This initial proposal was not signed by the Drosts because they decided that they didn't want to spend that amount of money. After further discussions, several items including a suspended ceiling, the partitions and the tile floor were specifically eliminated from the proposal. The proposal was then retyped by Richard Drost, son of Albin Drost and Edith Drost, deleting the above mentioned items. The agreement was prepared by the Drosts and was signed by the parties.

The agreement was a written contract dated November 30, 1967 for the construction of a Strand-Steel structure and

various components and accessories which were specifically itemized. The contract price of the signed agreement was $113,107.00 and the signed agreement did not contain work for floor tile, carpentry work and interior finish work and ceiling.

Construction was started pursuant to the contract and the preliminary plans but the Drosts consistently requested changes in both the design and concept of the building. Early in 1968 Boyd Dwright, supervisor for PBS Corp. entered into discussions with the Drosts for the purpose of changing the plans. Nathan A. Carras, the architect of the original plans, finally threw up his hands and refused to do any more revisions. The new drawings reflecting the changes were finally prepared by Boyd Dwright and Jack Mathis. Substantial changes were also made to the revised drawings.

The building was completed on January 19, 1969 and the keys to the building were formally given to Albin Drost at that time. Due to the many revisions and changes, both to the plans and requests by letter, the building contained many extra items not covered under the signed contract. An itemized list of these extras not covered under the contract was submitted to the Drosts at a total cost of $15,059.17, bringing the total cost of the building to $128,166.17. Against the amount of extras furnished, the Drosts received a credit for lightning rods, deleted painting of the roof, elimination of a manual door, substitution of chrome drains for those provided in the contract and the difference between the cost of Kimox glass and the type actually used in the building, all in the amount of $1,135.35.

At the time of the completion of the building the Drosts had paid to the PBS Corp. the sum of $90,825.00. The amount due under the contract, together with the extras and additional services requested by the Drosts, after allowing a credit, is the sum of $127,030.82, leaving a balance of $36,205.82.

For the purpose of argument, the Drosts have combined the first two specifications, i.e., the Findings are against the weight of the evidence and the decision is not supported by sufficient evidence, under a single section and we shall also treat them together.

The primary argument raised by this section is that the building was not a residence but rather an office building, and as such was a public building under Ind. Ann. Stat. § 20-421 (a) (Burns 1964) (repealed) that the plans and specifications shall be filed and approved by the director of the administrative building council before construction is commenced. Since this is a public building it was necessary for PBS Corp. to secure building permits from the Newton County Plan Commission and from the Indiana Administrative Building Council. The failure of PBS Corp., it is argued, to secure the necessary permits prevents PBS Corp. complete or substantial performance of the contract.

We must and do reject the above contentions of the Drosts. The signed contract required PBS Corp. to furnish all necessary structual drawings and architectural drawings for construction of this facility as described for the use in obtaining the necessary building permits." The above language only requires that PBS Corp. *furnish* the plans and does not place an affirmative duty upon it to actually obtain the permits. Also, it was the belief of PBS Corp., based on representations for the Drosts, that the building was to be used as a residence in which Richard Drost would also do a little work. Based on this information, PBS Corp. filed an application for a building permit with the Newton County Plan Commission listing the intended use of the building as a residence. The application became misplaced and no permit was ever issued. The trial court found that the parties contracted to build a residence and the finding is supported by the evidence. This court cannot weigh the evidence nor substitute its judgment as to the weight of the evidence for that of the finding and

decision of the trial court. *Light* v. *Lend Lease Transportation Company* (1959), 139 Ind. App. 234, 156 N. E. 2d 94; *Silverstein* v. *Central Furniture Co.* (1960), 131 Ind. App. 170, 163 N. E. 2d 690; *McKinley* v. *Overbay* (1961), 132 Ind. App. 273, 177 N. E. 2d 389.

But even assuming, but not deciding, that the contract was for the construction of a public building and affirmatively called for PBS Corp. to obtain the necessary building permits, this does not represent a valid defense to a suit to foreclose a mechanic's lien. In 26 A. L. R. 2d 1395 the annotation considers the question of the failure to obtain a permit as affecting the right to recover compensation and contains the following observation:

> "Most of the few cases which have considered the question have taken the view that the failure to obtain a work permit or to file plans and specifications does not preclude recovery under the contract by the terms of which the services were rendered, at least where the work was otherwise performed in accordance with the requirements of law."

In *Meissner* v. *Caravello* (1954), 4 Ill. App. 2d 428, 124 N. E. 2d 615, the Appellate Court of Illinois stated:

> "From the numerous decisions cited by the parties in their respective briefs we have reached the conclusion that the weight of authority holds that failure to obtain a building permit does not preclude recovery for work and materials furnished. The Illinois cases which denied recovery for a lack of a building permit indicate that a permit could not have been obtained because the work was done illegally. Douglas Lumber Co. v. Chicago Home for Incurables, 380 Ill. 87, 43 N. E. 2d 535; Konstant v. Maggos, 315 Ill. App. 131, 42 N. E. 2d 137.
>
> It should be noted that the failure to issue a building permit was an oversight, that the public welfare which these ordinances were calculated to protect was not injured, and that the building commissioner was evidently satisfied that the improvements were legally performed and in compliance with the building code."

In the instant case the failure to obtain the necessary permits was predicated upon the belief that none were necessary because the building was to be used as a residence.

There was no testimony as to whether the completed building met the requirements of the stricter classification under the Indiana Administrative Building Code and we will not presume illegality.

The contract involved here, on its face, contained no trace or suggestion of illegality and the fact that PBS Corp. might have performed in a manner not allowed by the law will not preclude it from recovering. *Meissner* v. *Caravello, supra; Measday* v. *Sweazer* (1968), 78 N. M. 781, 438 P. 2d 525; 6 Williston, Contracts § 1767 (rev. ed. 1938).

Moreover, the record is abundantly clear that the Drosts, from the time the building was completed have been using and occupying the same. This is certainly a factor to be considered by the trial court in determining whether PBS Corp. had substantially performed the contract. As stated in Corbin, Contracts, Vol. 3, 711, p. 788:

> "A factor that is of importance in determining whether or not the plaintiff has rendered substantial performance is the actual receipt and enjoyment of benefits by the defendant. If the plaintiff is suing merely for reasonable value—quantum meruit, the existence of such receipt and enjoyment is absolutely necessary; but it is of importance also in an action for the contract price based on 'substantial performance.' The largest field in which the doctrine has been applied is the field of building contracts. In these cases, not only has the contractor spent his time and money; also, his labor and materials have been incorporated in the defendant's land or chattels, and the latter has been benefited thereby much more greatly than the amount of the injury caused by the plaintiff's breach."

The evidence supports the trial court's determination that the signed contract was for the construction of a residence

without the installation of partitions, ceiling and floor covering, and that PBS Corp. proceeded with substantial performance of the contract.

Any evidence offered by the Drosts went only to the weight and credibility, questions which are not cognizable by this court. *Rudd* v. *Anderson* (1972), 153 Ind. App. 11, 285 N. E. 2d 836; *Turner* v. *State* (1972), 258 Ind. 267, 280 N. E. 2d 621; *Wm. J. & M. S. Vesey, Inc.* v. *Hillman* (1972), 151 Ind. App. 388, 280 N. E. 2d 88.

Next the Drosts contend that the decision and judgment are contrary to law and that the amount of recovery is excessive In *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N. E. 2d 573, 576, this court once again reiterated the general rule that:

> "It is only where the evidence is without conflict and leads to only one conclusion and the Trial Court reached a contrary conclusion that the decision will be disturbed as contrary to law i.e., that is where it affirmatively appears that reasonable men could not have arrived at the same judgment or conclusion. See *Edwards* v. *Wyllie* (1965), 246 Ind. 261, 203 N. E. 2d 200. In this context, this Court, as a reviewing Court, will consider only the evidence most favorable to the decision of the Trial Court. See *Walting* v. *Brown* (1965), 139 Ind. App. 18, 211 N. E. 2d 803 and *Jones* v. *State* (1964), 244 Ind. 682, 195 N. E. 2d 460."

The Drosts essentially argue that the trial court allowed recovery by PBS Corp. on a quantum meruit basis rather than on the contract, but used the contract price plus the amount demanded for extras less credits allowed in arriving at the $127,030.82.

We find no merit to this argument. The Drosts admit in their reply brief that if there has been substantial performance of a special contract, but not full performance, the amount of the value of the labor and material is the contract price less such deductions as should be made because of errors or omissions in doing the work and less any payments re-

ceived. This is precisely the formula used by the trial court and the only question remaining to this argument is whether PBS Corp. substantially performed the contract, a question which has already been answered in the affirmative.

In *Prewit et al.* v. *Londeree* (1966), 141 Ind. App. 291, 216 N. E. 2d 724, in the Concurring Opinion of Judge Mote, at p. 316, it is stated:

> "If this were not true and, in fact, if there were no rescission the parties to this record, in my opinion, should be bound by the contract price for the construction, which would include all materials and labor, and if there were some changes at the request of the appellants, either for elimination of some of the detail work prescribed by the contract or for additions thereto, adjustments would have to be made therefor. In such event I think there should be a diminution of the contract price for the items not required, and additions to the contract price for such items as were added thereto, all based upon reasonable value or cost thereof."

For all the items enumerated in the special contract the trial court went by the contract price and then allowed the cost of the additional items.

This is not a case where the contract called for a completed structure at a specified price, but rather it is a contract calling for the "construction of a one hundred foot in diameter steel structure, complete with and including the following basic components and accessories." The extra items were those that were in addition to those enumerated in the signed contract. The signed contract always remained the instrument regulating the price of the basic structure and specified accessories. Since the contract was not one that called for a completed structure, there could be no question of whether there had been so many substantive changes to the special contract that it could no longer be used to determine the value of the work done under it. *Rudd* v. *Anderson, supra.*

The final argument that the amount of recovery was excessive is predicated on the assumption that PBS Corp. was only entitled to recover on a quantum meruit basis, an assumption that this court has already rejected. As to the extras furnished in addition the the signed contract there was evidence given as to its reasonable value. On appeal this court cannot weigh evidence nor resolve questions of credibility. *Wm. J. & M. S. Vesey, Inc.* v. *Hillman, supra.*

The Drosts have not made any arguments or cited any authority concerning the judgments in favor of the two subcontractors, L. C. Glass and Hobart P & H. We therefore hold that no issue has been raised as to the two subcontractors and that the specifications of errors have been waived as against the two subcontractors pursuant to Rule A.P. 8.3 (A) (7).

The trial court, as the trier of fact, cannot be reversed unless the findings of fact by the trial court are clearly erroneous. Rule A.P. 15 (M) and T.R. 52 (A).

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C.J., and Staton, J., concur.

NOTE.—Reported in 286 N. E. 2d 846.