Mark DOVE, Plaintiff-Appellant,

v.

ROSE ACRE FARMS, INC.,
Defendant-Appellee.

No. 1–281A46.

Court of Appeals of Indiana,
First District.

May 11, 1982.

Michael L. Rogers, North Vernon, for plaintiff-appellant.

Harold H. McConnell, North Vernon, for defendant-appellee.

NEAL, Judge.

Plaintiff-appellant Mark Dove (Dove) appeals a negative judgment of the Decatur Circuit Court in favor of defendant-appellee Rose Acre Farms, Inc. in a trial before the court without the intervention of a jury.

We affirm.

STATEMENT OF THE FACTS

The evidence most favorable to support the judgment and the facts found specially by the trial court are as follows. Dove had

been employed by Rose Acre Farms, operated by David Rust (Rust), its president and principal owner, in the summers and other times from 1972 to 1979. The business of Rose Acre was the production of eggs, and, stocked with 4,000,000 hens and staffed with 300 employees, it produced approximately 256,000 dozen eggs per day. Rust had instituted and maintained extensive bonus programs, some of which were for one day only, or one event or activity only. For example, one bonus was the white car bonus; if an employee would buy a new white car, keep it clean and undamaged, place a Rose Acre sign on it, commit no tardiness or absenteeism, and attend one management meeting per month, Rose Acre would pay $100 per month for 36 months as a bonus above and beyond the employee's regular salary, to apply on payments. Any slight violation, such as being a minute late for work, driving a dirty or damaged car, or missing work for any cause, would work a forfeiture of the bonus. Other bonuses consisted of egg production bonuses, deed conversion bonuses, house management bonuses, and a silver feather bonus. This last bonus program required the participant to wear a silver feather, and a system of rewards and penalties existed for employees who participated. While the conditions of the bonuses varied, one condition existed in all bonus programs: during the period of the bonus, the employee must not be tardy for even a minute, and must not miss work any day for any cause whatever, even illness. If the employee missed any days during the week, he was sometimes permitted to make them up on Saturday and/or Sunday. Any missed work not made up within the same week worked a forfeiture of the bonus. These rules were explained to the employees and were stated in a written policy. The bonus programs were voluntary, and all the employees did not choose to participate in them. When a bonus was offered a card was issued to the participant stating his name and the terms and amount of the bonus. Upon completion of the required tasks, the card was attached to the pay sheet, and the bonus was added to the paycheck. Rust was strict about tardiness and absenteeism, whether an employee was on a bonus program or not. If an employee was tardy, his pay would be docked to the minimum wage, or he would be sent home and lose an entire day. A minute's tardiness would also deprive the employee of a day for purposes of seniority. As was stated in the evidence, bonuses were given for the "extra mile" or actions "above and beyond the call of duty." The purpose of the bonus programs and penalties was to discourage absenteeism and tardiness, and to promote motivation and dependability.

In June 1979, Rust called in Dove and other construction crew leaders and offered a bonus of $6,000 each if certain detailed construction work was completed in 12 weeks. As Dove conceded in his own testimony, the bonus card indicated that in addition to completing the work, he would be required to work at least five full days a week for 12 weeks to qualify for the bonus. On the same day Dove's bonus agreement, by mutual consent, was amended to ten weeks with a bonus of $5,000 to enable him to return to law school by September 1. Dove testified that there was no ambiguity in the agreement, and he understood that to qualify for the bonus he would have to work ten weeks, five days a week, commencing at starting time and quitting only at quitting time. Dove testified that he was aware of the provisions concerning absenteeism and tardiness as they affected bonuses, and that if he missed any work, for any reason, including illness, he would forfeit the bonus. The evidence disclosed that no exception had ever been made except as may have occurred by clerical error or inadvertence.

In the tenth week Dove came down with strep throat. On Thursday of that week he reported to work with a temperature of 104°, and told Rust that he was unable to work. Rust told him, in effect, that if he went home, he would forfeit the bonus. Rust offered him the opportunity to stay there and lay on a couch, or make up his lost days on Saturday and/or Sunday. Rust told him he could sleep and still qualify for the bonus. Dove left to seek medical treat-

ment and missed two days in the tenth week of the bonus program.

Rust refused Dove the bonus based solely upon his missing the two days of work. While there was some question of whether the construction job was finished, Rust does not seem to have made that issue the basis of his refusal. Bonuses to other crew leaders were paid. The trial court denied Dove's recovery and, in the conclusions of law, stated that Dove had not shown that all of the conditions of the bonus contract had been met. Specifically, Dove failed to work five full days a week for ten weeks.

## ISSUES

Dove presents the following issues for review in this appeal.

I. Whether the trial court, upon finding a valid contract, was correct in ignoring the doctrine of substantial performance, when it held that the plaintiff could only recover if every condition of the contract was met;

II. Whether the trial court was correct in enforcing the contractual terms which had become impossible to perform through no fault of the plaintiff; and

III. Whether the trial court was correct in allowing the defendant to seek enforcement of all terms of the contract when it entered the action with "unclean hands."

Issue III was not raised in the motion to correct errors as required by Ind.Rules of Procedure, Trial Rule 59(D)(1), and the same is waived by virtue of Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). *Hockelberg v. Farm Bureau Insurance Company,* (1980) Ind.App., 407 N.E.2d 1160; *Indiana Motorcycle Association v. Hudson,* (1980) Ind.App., 399 N.E.2d 775.

## DISCUSSION AND DECISION

*Issue I. Substantial performance*

Dove argues that the bonus agreement was implemented to (1) insure his presence on the construction site, and (2) cut the cost of construction through maximum produc-

tion by workers. He next contends that Rose Acre got what it bargained for, that is, the completion of the project. He argues that he was present on the job, including the hours he worked late, at least 750 hours during the ten weeks, while regular working hours would amount to only 500 hours. Therefore, he concludes, there was substantial compliance with the agreement, and he should not be penalized because he failed to appear on the last two days because of illness. Rust disputes that Dove worked any significant amount of overtime.

■ Dove cites cases that are not employee bonus cases, which state the rule that ordinarily a party seeking enforcement of a contract must show that he has done everything the contract requires of him or that the party against whom he seeks relief received that to which the contract entitles him. 6 I.L.E. *Contracts* § 223; *Kroeger v. Kastner,* (1937) 212 Ind. 649, 10 N.E.2d 902; *McFarlan Carriage Company v. Connersville Wagon Company,* (1911) 49 Ind.App. 318, 96 N.E. 400. This rule is modified by the doctrine of substantial performance. *See Drost v. Professional Building Service Corp.,* (1972) 153 Ind.App. 273, 286 N.E.2d 846; 6 I.L.E. *Contracts* § 228. Substantial performance applies where performance of a nonessential condition is lacking, so that the benefits received by a party are far greater than the injury done to him by the breach of the other party. *Drost, supra; See Whitcomb v. Roll,* (1907) 40 Ind.App. 119, 81 N.E. 106; Willis, *Promissory and Non-Promissory Conditions* 16 Ind.L.J. 349, 356 (1941). Dove cites no case applying the doctrine to bonus cases, and we have found few cases on point. *See Squadrito v. Credito Italiano,* (1948) 193 Misc. 34, 83 N.Y.S.2d 334; *Magruder v. Hagen-Ratcliff and Co.,* (1948) 131 W.Va. 679, 50 S.E.2d 488; *Kaiser v. Better Farms, Inc.,* (1946) 249 Wis. 302, 24 N.W.2d 621. In *Squadrito, supra,* it is not clear what conditions attached to the bonuses or how, if at all, the employees had failed to comply. In *Magruder, supra,* the evidence failed to show that the employee was aware of the contest rules, and it is not clear that he had failed to comply with any

condition. The *Kaiser* case, *supra*, although factually similar to the case at bar, involved a bonus contract which was less specific than Rose Acre's. Furthermore, neither the bonus contract nor any surrounding circumstances clearly indicated that a single day's absence was intended to work a forfeiture. In the case at bar there is evidence that Dove violated an essential condition which was strictly enforced.

■ Investigation of authority in bonus situations reveals that a bonus arrangement is contractually enforceable where it is shown that an employee has done or has foregone something which he was not otherwise obligated to do or forego. *Spickelmier Industries, Inc. v. Passander*, (1977) 172 Ind.App. 49, 359 N.E.2d 563. *See Colonial Mortgage Co. of Indiana v. Windmiller*, (1978) Ind.App., 376 N.E.2d 529. However, Rose Acre does not contest the existence of a valid bonus contract. It defends its judgment on the grounds that the conditions designated in the contract were not fulfilled because Dove did not work five days a week for ten weeks. It is stated in 56 C.J.S. *Master and Servant* § 98:

> "An employee is not entitled to a bonus until after the time stipulated in the contract for its payment, or until other conditions designated in the contract for its payment have been fulfilled, in the absence of evidence establishing a modification or waiver of the conditions, and unless the nonfulfillment is due to the employer's act or omission." (Footnotes omitted.)

The principal Indiana case on bonus contracts is *Montgomery Ward & Co. v. Guignet*, (1942) 112 Ind.App. 661, 45 N.E.2d 337. There a bonus, in addition to salary, expressed in terms of a percentage of the annual net profit, was provided to Guignet, a store manager. His employment contract under its own terms was terminable at the will of Montgomery Ward, with or without cause, and if his contract was terminated before the calendar year's end, the rights under the bonus were forfeited. Guignet was terminated on October 30, and the court held that he could not recover either all or a portion of the bonus. The court stated that the right of Guignet to recover must be determined from a study of all of the provisions of the adopted plan. The court further noted that since the terms of the plan were well known to Guignet, he became bound by the provisions governing the payment of the bonus, and he was required to meet the conditions stipulated in the plan before he could share in the benefits. The right of Guignet to a bonus was conditioned upon his continuous service for the entire year in which the profits of the business were computed, and the court stated that the condition was not unconscionable or contrary to public policy.

The court analyzed the authorities of other jurisdictions which, absent bad faith or fraud, have upheld bonus plans requiring employees to complete the term in order to draw the bonus or any part of it, citing *National Manufacture & Stores Corporation v. Whitman*, (4th Cir. 1938) 93 F.2d 829, and *Muir v. Leonard Refrigerator Co.*, (1934) 269 Mich. 406, 257 N.W. 723. In the latter case the court said:

> "It is difficult for plaintiff to extricate himself from the conditions of employment which he has voluntarily assumed, for even though the forfeiture provisions seem harsh, we can only interpret the contract which the parties have made." (Citations omitted.)

*Id.* 269 Mich. at 408, 257 N.W. 723. Such a rule was applied in *Fontius Shoe Co. v. Lamberton*, (1925) 78 Colo. 250, 241 P. 542, where a company, having the right to discharge an employee at will, wrongfully discharged him. The *Fontius* court stated:

> "So far as the bonus is concerned, the contract in the instant case is nothing more than an announcement of the policy of defendant. Its forfeiture provisions seem harsh, but we can act only upon the contract which the parties have made." (Citations omitted.)

78 Colo. at 253, 241 P. 542. The court in *Montgomery Ward* analyzed cases such as *Roberts v. Mays Mills*, (1922) 184 N.C. 406, 114 S.E. 530, and *Zwolanek v. Baker Manufacturing Company*, (1912) 150 Wis. 517, 137

N.W. 769, which permitted proportionate recovery of a bonus. However, it noted that in those cases the discharge was wrongful and the bonus was offered as an added inducement for continuous service.

After noting the absence of fraud or bad faith on the part of Montgomery Ward, the court concluded that the right to the bonus did not arise until Guignet met the specified condition of the bonus, namely continuing to serve for the entire year.

Dove relies heavily upon *Windmiller, supra,* which he cites for the proposition that "the continued employment of the plaintiff . . . was not a material term in collecting under a compensation agreement, because the services contracted for had already been rendered." Examination of *Windmiller* reveals that the court in no way disturbed the rule in *Montgomery Ward, supra,* but affirmed it stating:

"While the parties might agree to such provisions, they must employ unequivocal language to that effect if they intend to seek enforcement in the courts. *See Montgomery Ward v. Guignet* (1942), 112 Ind.App. 661, 45 N.E.2d 337."

376 N.E.2d at 532. The essence of the holding in *Windmiller* was that the court construed the terms of an ambiguous employment contract against the employer and found that the contract did not require continuous service as a condition to receive the bonus under the facts of that case.

*Spickelmier Industries, supra,* cited by the parties, turns on the existence of an enforceable bonus contract, which is not an issue here. Dove has cited no Indiana case which has reached a result contrary to that of *Montgomery Ward, supra.*

■ We are constrained to observe, in the case before us, that the bonus rules at Rose Acre were well known to Dove when he agreed to the disputed bonus contract. He certainly knew Rust's strict policies and knew that any absence for any cause whatever worked a forfeiture of the bonus. With this knowledge he willingly entered into this bonus arrangement, as he had done in the past, and under *Montgomery Ward, supra,* he must be held to have agreed to all of the terms upon which the bonus was conditioned. If the conditions were unnecessarily harsh or eccentric, and the terms odious, he could have shown his disdain by simply declining to participate, for participation in the bonus program was not obligatory or job dependent.

Contrary to Dove's assertion that completion of a task was the central element of the bonus program, we are of the opinion that the rules regarding tardiness and absenteeism were a central theme. Rust stated that the purpose of the bonus program was to discourage tardiness and absenteeism and to promote motivation and dependability. Indeed, some of the bonus programs such as the white car bonus and the silver feather bonus were apparently an effort on the part of Rust to establish among the employees an identity with Rose Acre and to create an *esprit de corps.* The direct tangible benefits to Rose Acre would be unmeasurable, and the burden upon the employees would be equally unmeasurable. Yet, Rust was willing to pay substantial bonuses in the implementation of his program, and the employees, including Dove, were quite as willing to take the money.

No fraud or bad faith has been shown on the part of Rose Acre, and no public policy arguments have been advanced to demonstrate why the bonus contract should not be enforced as agreed between the parties. Under *Montgomery Ward, supra,* and *Windmiller, supra,* we are not at liberty to remake the contract for the parties.

*Issue II. Impossibility of performance*

Dove argues that he should be relieved of strict performance because his illness rendered his performance impossible. He cites *Gregg School Township v. Hinshaw,* (1921) 76 Ind.App. 503, 132 N.E. 586. That case states that where the performance of a contract becomes impossible, non-performance is excused, and no damages can be recovered. The rule was applied in denying a teacher wages for lost time where a school was closed by health authorities because of an epidemic. He cites also *In re Traubs's Estate,* (1958) 354 Mich. 263, 92

N.W.2d 480; *Bracken v. Wagner*, (1956) 3 Ohio Opin.2d 25, 134 N.E.2d 382; and *Leonard v. Autocar Sales & Service Co.*, (1945) 392 Ill. 182, 64 N.E.2d 477, for the proposition that contracts to perform personal services are considered to have been made on the implied condition that the party shall be alive and capable of performing the contract; hence, death or disability, including sickness, will operate as a discharge or termination of the contract or an excuse for non-performance.

None of these cases involved a contract for personal services, though dicta contained general language applicable to such contracts. Generally, impossibility of performance is a defense to an action for damages. *See Gregg School Township, supra.* Dove has not demonstrated how the doctrine is applicable here. Certainly a plaintiff cannot, upon failing to perform his part of the contract, sue his adversary for damages alleging that his own non-performance was because of impossibility. Suppose Dove, because of illness, could not work at all. Could he sue for wages? We are of the opinion that all merit in this line of reasoning was argued and discussed under Issue I, substantial performance.

For the reasons given above, we hold that Dove failed to perform all of the conditions of the contract and is not entitled to recover any portion of the bonus. The judgment is affirmed.

Affirmed.

RATLIFF, P. J., and YOUNG, J. (participating by designation), concur.