In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4189

ZEMCO MANUFACTURING, INCORPORATED,

Plaintiff-Appellant,

v.

NAVISTAR INTERNATIONAL TRANSPORTATION
CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 97 C 260--William C. Lee, Chief Judge.

ARGUED SEPTEMBER 13, 2001--DECIDED November 5, 2001


  Before RIPPLE, ROVNER and EVANS, Circuit
Judges.

  RIPPLE, Circuit Judge.  Zemco
Manufacturing, Inc., ("Zemco") filed this
action against Navistar International
Transportation Corp. ("Navistar")
alleging that Navistar had breached two
distinct, but interrelated, agreements
with Zemco ("Count I" and "Count II") and
had conspired to interfere with a
contract ("Count III"). Earlier in this
litigation, the district court granted
Navistar's motion for summary judgment on
Count III, and we affirmed./1 We
remanded the remainder of the case to the
district court. While on remand, the
district court recommended and the
parties consented to separate trials for
the remaining contract claims. The
parties opted to litigate Count I first,
and a jury returned a verdict for
Navistar. Before Count II proceeded to
trial, the district court granted
Navistar's motion for summary judgment on
this claim finding that the consideration
supporting the contract had failed. For
the reasons set forth in the following
opinion, we reverse the judgment of the
district court as to Count II and remand
this case for further proceedings.

I

BACKGROUND

A. Facts

Navistar manufactures heavy-duty machinery ranging from diesel engines to semi-trailer trucks. As in the case of most manufacturers, however, Navistar cannot produce all of the parts required to complete its goods; rather, it relies on outside suppliers to furnish many of the components used in its final product. One of these suppliers, Zemco Manufacturing, provided Navistar with parts including spring shackles and air manifolds.

This particular relationship between Navistar and Zemco originated in a written contract ("Contract AZ010B") which the parties signed in 1983. Although the parties executed several written addenda extending Contract AZ010B in yearly increments, they ended this practice in 1987. Nevertheless, despite the absence of a written agreement, Navistar continued to purchase its parts from Zemco. In the summer of 1995, however, Navistar began to withdraw its business from Zemco and to obtain parts from a different supplier. Believing that the parties had agreed to an oral extension of Contract AZ010B, Zemco objected to Navistar's actions. In an effort to resolve these differences, representatives from both companies met with each other several times during the late summer months of 1995.

During these meetings, Zemco's president, Vincent Tippmann, maintained that Navistar's conduct breached Contract AZ010B. However, Tippmann apparently indicated that Zemco would cooperate with Navistar's efforts to move its business to another supplier. More precisely, Zemco's president allegedly stated: "I'm going to do any transition you want. I said I will not withhold anything, won't shut [you] down. You guys do whatever you're going to do. I said I have differences, I'm going to hold you bound. But I said [it will have] no reflection in the operation." R.120, Ex.B at 79. However, still concerned that Zemco would cease providing parts during the transition period, a Navistar representative apparently pressed for further assurances. Tippmann reiterated his company's earlier stance--"I assured

her . . . that I was going to cooperate. I told her I'd been through this before." R.120, Ex.B at 103.

While Navistar slowly established its ties with the new supplier, Zemco continued to furnish the necessary parts to Navistar. However, having grown impatient with this situation, Zemco sent a letter to Navistar in October of 1995 demanding that it honor Contract AZ010B and end the transition to the alternate supplier.

On December 7, 1995, Doug Willard, a buyer for Navistar, sent a letter ("December Contract") to Zemco that stated:

Navistar will now continue the outsourcing of its products from Zemco, first confirmed verbally to you on July 19, 1995. As I told you then, Navistar will work with you during the transition. You agreed to cooperate 100%.

Please send me a list of all parts in process or finished. Also any raw material (by size and alloy) that you have left. As you know, Navistar only commits to sixty day's worth of parts. We will purchase any material over this sixty day commitment, providing this matter [the dispute over Contract AZ010B] will be concluded without litigation. Fax the lists to me . . . as soon as possible.

R.20, Ex.F.

Within a few weeks, Zemco had sent the requisite list detailing the parts and raw materials it possessed. Over the next nineteen months, Zemco repeatedly sought payment from Navistar for the items contained on the list plus accrued interest and storage costs. During this period, Zemco refrained from commencing any action on Contract AZ010B. Navistar, however, did not make payments under the December Contract.

B.  District Court Proceedings

1.

In July of 1997, Zemco filed suit against Navistar. Count I alleged that Navistar had breached the parties' purported agreement to extend Contract

AZ010B into June of 1996 when it began to purchase parts from another supplier./2 Count II contended that Navistar had breached the December Contract when it failed to purchase the raw materials and miscellaneous parts referenced in this document. With the consent of the parties, the district court scheduled separate trials for the individual contract claims. Count I proceeded to trial first. A jury concluded that the parties had not agreed to an extension of Contract AZ010B. Absent an underlying agreement, Navistar could not be held liable for breach of contract on this count.

Soon after this victory, Navistar moved for summary judgment on Count II. Navistar contended that the consideration underlying the December Contract had failed and thus the agreement was void./3 Navistar argued that Zemco's agreement to refrain from litigating on Contract AZ010B provided the only consideration for the December Contract. In Navistar's view, the first paragraph of the December Contract merely referenced a prior dealing between the parties and did not supply additional consideration for the agreement. According to Navistar, Zemco's filing of Count I, alleging a breach of Contract AZ010B, constituted a failure to perform its obligation under the contract. Navistar argued that, because Zemco had failed to satisfy its portion of the agreement, Zemco could not now seek enforcement of the contract in court.

Zemco, however, maintained that its promise to cooperate in the transition provided additional consideration for the agreement. It emphasized that the first portion of the December Contract explicitly referenced this particular promise. Because Zemco had cooperated, it maintained that it could enforce the contract. At a minimum, it further submitted, the December Contract was sufficiently ambiguous as to the consideration underlying it to preclude summary judgment.

2.

After considering the parties' positions, the district court granted summary judgment for Navistar on Count II. In interpreting the December

Contract, the district court held that this two-paragraph agreement between the parties was unambiguous and that it failed for lack of consideration. More precisely, the court determined that Zemco's promise not to sue on Contract AZ010B formed the sole consideration for the December Contract. When Zemco filed suit on AZ010B, the consideration underlying the December agreement, which was in the nature of an accord and satisfaction, vanished./4 The district court therefore rejected Zemco's view that its earlier oral promise to cooperate in the transition, described in the first paragraph of the agreement, was additional consideration for the December accord. Rather, the court determined that the promise to cooperate was part of an earlier, independent verbal agreement. As Zemco could not enforce the contract, the district court granted Navistar's motion for summary judgment.

II

DISCUSSION

A.  Standard of Review

We review de novo the district court's decision to grant summary judgment. See Thomas v. Pearle Vision, Inc., 251 F.3d 1132, 1136 (7th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to inter rogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court's function is not to weigh the evidence but merely to determine if "there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We must ask whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. In assessing whether a genuine issue of material fact exists, we must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. See id. at 255; Basith v. Cook County, 241 F.3d 919, 926 (7th Cir. 2001).

Turning to the matter before us, we are confronted with a single issue--the interpretation of the following two-paragraph contract between the parties:

Navistar will now continue the outsourcing of its products from Zemco, first confirmed verbally to you on July 19, 1995. As I told you then, Navistar will work with you during the transition. You agreed to cooperate 100%.

Please send me a list of all parts in process or finished. Also any raw material (by size and alloy) that you have left. As you know, Navistar only commits to sixty day's worth of parts. We will purchase any material over this sixty day commitment, providing this matter will be concluded without litigation. Fax the lists to me . . . as soon as possible.

R.20, Ex.F.

The district court found this contract unambiguous. It determined that the agreement to refrain from litigation contained in the second paragraph provided the only consideration for the December Contract. Because Zemco did not comply with this obligation when it chose to pursue its potential claim under Contract AZ010B, the consideration underlying the December Contract failed. In short, Zemco's failure to perform its obligation under the December agreement precluded it from enforcing the contract's provisions.

Zemco argues that the December Contract is susceptible to an alternate interpretation. It submits that the terms of the agreement indicate the promise to cooperate during the transition provided additional consideration for the December Contract. Because Zemco believes that it fully complied with this obligation to cooperate, it contends that Navistar cannot avoid the December agreement with a failure of consideration defense. Navistar's position on appeal tracks the rationale of the district court's decision.

B.  Principles Governing Contract Interpretation

Before turning to the submissions of the

parties concerning the December Contract, we set forth the general principles that will guide our inquiry. There does not seem to be any significant disagreement between the parties about the governing principles of Indiana contract law.

This court has stated that, as a general rule, "interpretation of an unambiguous contract is a question of law." Bechtold v. Physicians Health Plan of N. Ind., Inc., 19 F.3d 322, 325 (7th Cir. 1994) (citing Ryan v. Chromalloy Am. Corp., 877 F.2d 598, 602 (7th Cir. 1989)); see also Tri-Central High Sch. v. Mason, 738 N.E.2d 341, 344 (Ind. Ct. App. 2000) (noting that interpretation of a contract is a question of law for which summary judgment is particularly appropriate). The Indiana law that governs interpretation of a contract is well settled. First, "a court will endeavor to ascertain the parties' intent by language used in the agreement to express obligations." Tri-Central High Sch., 738 N.E.2d at 344. The contract terms, including individual words, phrases and sentences, should be given their plain and ordinary meaning. See Ecorp, Inc. v. Rooksby, 746 N.E.2d 128, 131 (Ind. Ct. App. 2001). However, the court cannot read portions of an agreement "exclusive of other contractual provisions." Grandview Lot Owner's Ass'n, Inc. v. Harmon, 2001 WL 925721 (Ind. Ct. App. Aug. 21, 2001). Rather, the document must be read as a whole when attempting to determine the parties' intentions. See First Fed. Sav. Bank of Ind. v. Key Markets, Inc., 559 N.E.2d 600, 603 (Ind. 1990).

If this methodology indicates that the contract is unambiguous, the court may not consider any evidence "beyond the four corners of the document to determine the parties' intent." Tri-Central High Sch., 738 N.E.2d at 344; see also Crawford County Cmty. Sch. Corp. v. Enlow, 734 N.E.2d 685, 690 (Ind. Ct. App. 2000). Ambiguity does not exist simply because the parties dispute the meaning of the contract's terms. Ecorp, 746 N.E.2d at 131. Rather, an agreement contains ambiguities if "reasonable people could come to different conclusions about the contract's meaning." Id. Ambiguity may be generated by lack of clarity in the syntax of a sentence. See J. Allan Farnsworth,

Contracts sec. 7.8 at 455-56 (3d ed. 1999). Moreover, just as the structure of a statute may cloud its meaning, the overarching structure of a contract may generate ambiguities as well. To the extent ambiguities exist, a contract "may be explained or supplemented by evidence of consistent additional terms." Ind. Code 26-1-2-202(b). With these principles in mind, we turn to the text of the December Contract.

C.  Interpretation of the December Contract

1.

   Taking the view that the two paragraphs set forth above were unambiguous, the district court held that Zemco's promise to refrain from litigation with respect to contract AZ010B was the sole consideration that Zemco gave in return for Navistar's commitment to purchase at least sixty days worth of parts and to purchase any remaining material and inventory that Zemco may have. The agreement to cooperate during the transition period described in the first paragraph was considered to be a mere reference to an earlier oral promise./5

   Some factors support this reading of the December Contract. The words and phrases the parties used to express their agreement provide some plausible evidence that the promise not to sue formed the sole consideration for the December Contract. A good deal, although not all, of the contract's first paragraph is cast in the past tense. This section of the agreement states "as I told you then;" furthermore, as if referencing some prior arrangement between the parties, it continues "You agreed to cooperate 100%." In some sense, this language lends itself to Navistar's position that the first paragraph merely references some past agreement between the parties. If the first paragraph is read as an attempt to place the relationship of the parties in some historical context, this section would not provide additional consideration for Navistar's promise to purchase Zemco's remaining inventory.

   In addition, the location of the pertinent sentences also bolsters Navistar's interpretation of the December Contract. The sentence "You agreed to

cooperate 100%" is a simple declaratory statement. It arguably lacks a textual connection with Navistar's promise contained in the second paragraph to purchase raw materials and inventory. In contrast, the agreement to refrain from litigation on Contract AZ010B is embedded in the text relating to Navistar's promise to purchase these goods from Zemco. Finally, the bulk of the language in the second paragraph is cast in the future tense.

A reasonable person, construing these factors, could determine that the promise to refrain from litigation provided the sole consideration for the December Contract. This interpretation of the agreement raises the possibility that there has been a failure of consideration. Indiana law provides that consideration fails "when a party to a contract . . . [does not] perform the acts promised." Alber v. Standard Heating & Air Conditioning, Inc., 476 N.E.2d 507, 510 (Ind. Ct. App. 1985). If the agreement not to sue on Contract AZ010B formed the only consideration for the December Contract, Zemco would have a difficult time proving that it satisfied its end of the bargain. Having sued on Contract AZ010B, Zemco's failure to perform the acts promised would foreclose its attempts to enforce the agreement. See, e.g., Crumpacker v. Farrell, 516 F. Supp. 276, 281 (N.D. Ind. 1981); Licocci v. Cardinal Assoc., Inc., 492 N.E.2d 48, 52 (Ind. Ct. App. 1986) (indicating that a party in material breach of a contract cannot maintain an action on that contract). Under this interpretation of the December Contract, the district court's ultimate decision to prohibit Zemco's suit would not only be plausible but would most likely be correct. However, the contract seems susceptible to other interpretations.

2.

Although the above interpretation of the December Contract is a plausible one, it is not the only reasonable reading of the agreement's language. Specifically, the agreement could be construed to have imposed a broad obligation on Zemco to cooperate throughout the transition period. In return, Navistar agreed to purchase certain parts, inventory and raw materials from this supplier. Both the

syntax of the sentences and structure of the overall agreement indicate the plausibility of this reading.

Notably, at oral argument, counsel for Navistar took the position that the correctness of the district court's ruling turned on the differences in tense employed in the two paragraphs. However, a closer examination of the December Contract reveals that the language of the first paragraph is not cast exclusively in the past tense. Indeed, the contract begins "Navistar will now continue the outsourcing of its products from Zemco." This language can be construed as stating that Navistar would continue to purchase parts from Zemco as long as Zemco continued to cooperate. Moreover, when focusing on the contract in its entirety, this reading of the first paragraph is quite compatible with the text of the second paragraph. In particular, paragraph two may be read to set forth a mere example of the type of cooperation that might be expected--no litigation over Contract AZ010B. In short, rather than reading each paragraph as a distinct element of the agreement, the December writing can be read as a totality. A reasonable person could construe the document as creating a binding agreement as of December 7 that governed how the parties would conduct themselves during the transition period; Zemco would cooperate in the transition while Navistar continued to purchase not only parts but also any excess raw material and inventory held by the supplier.

Under this interpretation of the contract, the district court's conclusion that a complete failure of consideration rendered the contract unenforceable is far from inevitable. At first blush, the second interpretation of the agreement appears to implicate Indiana's doctrine of partial failure of consideration. See, e.g., Alber, 476 N.E.2d at 510. A partial failure of consideration occurs when an individual does not deliver a portion of his promised performance. See id. Unlike complete failure of consideration, partial failure does not render the entire contract unenforceable. Instead, "if the undelivered consideration is allocable to an independent covenant by the other party, the contract may be avoided on a pro tanto basis." Id. (citing Beal v. Beal, 79 Ind. 280

(1881)). However, the application of the doctrine poses problems under the second interpretation of the contract. Assuming that Zemco's decision to sue on Contract AZ010B amounts to partial nonperformance, the undelivered "consideration" could not be allocated to an independent provision of the December Contract. Because the partial performance is not conducive to allocation, Navistar could not avoid the contract on a pro tanto basis.

The more apt inquiry under this reading of the agreement is whether Zemco has substantially performed its obligations underneath the December Contract. As we have emphasized, failure of consideration, whether partial or complete, relates to a party's performance of its contractual promises. When a party does not perform at all, the case resolves itself; there is a failure of consideration, and the party cannot enforce the contract. When an individual does perform some of its contractual obligations, a more complicated situation arises. The early common law traditionrequiring perfect compliance with the terms of a contract has long been ameliorated by the doctrine of substantial performance. See Dove v. Rose Acre Farms, Inc., 434 N.E.2d 931, 933 (Ind. Ct. App. 1982); Richard A. Lord, Williston on Contracts sec. 44.52, at 217-18 (4th ed. 2000). The doctrine of substantial performance "applies when performance of a nonessential condition is lacking, so that the benefits received by a party are far greater than the injury done to him by the breach of the other party." Dove, 434 N.E.2d at 933. Rather than permitting a slight breach to preclude recovery, the doctrine allows a party to maintain its cause of action on the contract in spite of minimal noncompliance. See F. McConnell & Sons, Inc. v. Target Data Sys., Inc., 84 F. Supp. 2d 961, 978 (N.D. Ind. 1999); Dove, 434 N.E.2d at 933. Whether a party substantially performed its contractual obligations generally poses a question of fact. See F. McConnell & Sons, Inc., 84 F. Supp. 2d at 978-79; E. Allan Farnsworth, Farnsworth on Contracts sec. 8.12, at 467 (2d ed. 1998). Such a fact question exists under the second interpretation of the agreement.

The December Contract can be read to impose a broad obligation on Zemco to

cooperate with Navistar during the transition period. Upon reviewing the record, a fact question exists whether Zemco has performed its portion of the agreement. In particular, Zemco supplied Navistar with the necessary parts throughout the transition period. Zemco never attempted to shut down Navistar's assembly lines by withholding supplies. This course of performance creates a fact question whether Zemco substantially, if not completely, complied with its contractual obligations under the December agreement. Thus, the district court's conclusion that the contract was unenforceable due to a failure of consideration is not compelled under the second reading of the agreement.

3.

Indeed, the previous interpretations of the agreement are not the only plausible readings of the December Contract. There is a third variation of the contractual language that is also reasonable. The first paragraph of the agreement can be read to impose on Zemco a general obligation to cooperate in the transition. The specific cooperation of refraining from litigating the parties' disputes over Contract AZ010B serves as specific consideration for Navistar's purchase of the excess material over the sixty-day commitment.

Under this interpretation of the agreement, the contractual consideration for Navistar's purchase of the parts was Zemco's cooperation. Zemco's obligation entailed making the parts available to Navistar in a timely fashion. Simply put, Zemco agreed not to shut down Navistar's operations by refusing to supply the much needed parts. In contrast, the more specific promise to refrain from litigation over Contract AZ010B served as consideration for Navistar's purchase of the excess material inventory over its sixty-day commitment. Zemco's suit against Navistar for the breach of Contract AZ010B would constitute a failure of consideration with respect only to the purchase of the excess material inventory.

Unlike previous readings of the contract, this interpretation of the agreement would implicate the doctrine of partial failure of consideration. As we

noted earlier, partial failure of consideration occurs when a party performs only a portion of its contractual obligations. To the extent the failure to perform is allocable to a specific provision of the contract, the agreement "may be avoided on a pro tanto basis." Alber, 476 N.E.2d at 510. The third interpretation of the contract binds Zemco's promise to refrain from litigation to Navistar's commitment to purchase the excess material inventory. As the failed performance is allocable to a specific provision of the contract, Navistar could avoid this portion of the agreement. However, if Zemco cooperated in the transition, then Navistar would remain liable on the remainder of the December Contract.

4.

Because reasonable people could come to different conclusions about the agreement's meaning and resort to extrinsic evidence will be appropriate, we hold that a genuine issue of material fact exists concerning the precise consideration supporting the December Contract. Accordingly, we reverse the entry of summary judgment for Navistar.

We, along with the Indiana courts, have noted that contract interpretation is often a question of law well suited for disposition on summary judgment. See Bechtold, 19 F.3d at 325; Ferrel v. Dunescape Beach Club Condominiums, 751 N.E.2d 702, 709 (Ind. Ct. App. 2001) (citing Rogier v. American Testing & Eng'g Corp., 734 N.E.2d 606, 614 (Ind. Ct. App. 2000)). However, when a contract contains ambiguities that the parties must explain through extrinsic evidence, the trier of fact, not this court, must resolve the conflicting interpretations of the agreement. Upon viewing the terms of the agreement in the light most favorable to Zemco, we believe that the December Contract is susceptible to at least three distinct interpretations. As we have already noted, the district court correctly ruled that Zemco had the right to use the late summer conversations to explain the December Contract if the agreement contained ambiguities. Given the alternate reasonable interpretations of the December Contract, Zemco, as well as Navistar, may introduce extrinsic evidence to explain but not alter or

contradict the terms of the written accord.

We note that if the three interpretations merely resulted in the same ultimate conclusion--the contract failed for lack of consideration--then summary judgment would remain appropriate. However, as we have already indicated, the distinct interpretations of the agreement may produce radically different resolutions to the litigation on Count II. Were a trier of fact to find that the promise to refrain from litigation provided the only consideration to the December Contract, Navistar could raise successfully its failure of consideration defense. If a trier of fact were to determine that the entire contract was supported by Zemco's promise to cooperate fully and by its promise not to sue on Contract AZ010B, it will be necessary to determine whether there has been substantial performance by Zemco. If the finder of fact determined that the agreement not to sue on Contract AZ010B was specific consideration only for the agreement to purchase materials over the sixty-day commitment, Navistar could avoid the contract only on a pro tanto basis. Given the ambiguities in the December Contract and the importance that resolution of this issue will have on the ultimate outcome of the litigation, summary judgment is precluded on Count II.

5.

It might seem incongruous for us to hold that there is a genuine issue of triable fact with respect to the December Contract after a jury has determined that the purported extension of Contract AZ010B never occurred. But, upon reflection, it does not appear that such a conclusion would be necessarily illogical. During litigation on Count I, Zemco argued that Contract AZ010B with Navistar had been a requirements contract that the parties had agreed to extend beyond its original termination date. The jury disagreed with this theory and rendered a verdict for Navistar. This determination does not preclude the possibility that the December Contract embodies an entirely different understanding between the parties. In particular, as we have previously discussed, the December Contract can be

read as creating an agreement as to how the parties would conduct themselves during the transition period. If the contract is interpreted in this light, this agreement would appear to bind the parties regardless of the outcome of the litigation on Contract AZ010B. The relevant inquiry is the parties' performance of their obligations under the December Contract; the outcome of Count I would not necessarily affect those promises.

Conclusion

Because the December Contract is susceptible to reasonable alternate interpretations, we conclude that the agreement is ambiguous thereby precluding summary judgment. Accordingly, we reverse the judgment of the district court and remand this case for further proceedings. Zemco may recover the costs of this appeal.
REVERSED and REMANDED

FOOTNOTES

/1 This case comes to us on a successive appeal. In our first encounter with this case, see Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp., 186 F.3d 815 (7th Cir. 1999), we addressed Counts I and III of Zemco's claim. Although affirming the grant of summary judgment on Count III, see Zemco, 186 F.3d at 823, we reversed and remanded the grant of summary judgment on Count I. See id. at 822. Count II, the portion of Zemco's claim before us today, was not at issue in the earlier appeal because the district court had directed entry of final judgment only for Counts I and III pursuant to Federal Rule of Civil Procedure 54(b). See Zemco, 186 F.3d at 816 n.1.

/2 More precisely, Zemco alleged that the parties had entered an exclusive requirements contract when they extended Contract AZ010B. Initially, the district court determined that, as a matter of law, the parties had not entered a requirements contract and, in the alternative, the extension had violated the statute of frauds. On the initial appeal, we reversed the entry of summary judgment on Count I. See Zemco, 186 F.3d at 822. We concluded that a triable issue of fact existed concerning the agreement's status as a requirements contract. See id. at 818. Likewise, we held that a genuine issue of fact existed whether the relevant documentation satisfied the statute of frauds. See id. at 821-22. Because of this factual dispute, we reversed the entry of summary judgment on Count I and remanded the case

for further proceedings. See id. at 823.

/3 As commentators have noted, the phrase "failure of consideration" is a misnomer. See, e.g., John P. Calamari & Joseph M. Perillo, The Law of Contracts sec. 11.21, at 428 (4th ed. 1998); E. Allan Farnsworth, Contracts sec. 8.9, at 553-58 (3d ed. 1999); John Edward Murray, Jr., Murray on Contracts sec. 108A (3d ed. 1990). A party asserting the defense of failure of consideration is not really arguing that the contract lacks the necessary bargained for exchange. Rather, the party contends that his adversary has failed to perform her obligation under the contract. If the breach or failure to perform goes to the essence of the agreement, the adversary cannot sue to enforce the contract. See, e.g., Crumpacker v. Farrell, 516 F. Supp. 276 (N.D. Ind. 1981). However, because the district court's opinion and the parties' arguments are couched in terms of failure of consideration, we employ this terminology in our opinion. However, we underscore that the true nature of this phrase relates to a party's failure to perform its obligation under the contract.

/4 The district court noted that Zemco could have sued solely to enforce the December Contract without negating the consideration underlying that agreement.

/5 Navistar submits that, at an earlier stage of this litigation, before the litigation was bifurcated, Zemco had argued that the December 7 letter constituted written confirmation of an earlier oral agreement made between the parties during their late summer meetings of 1995. Navistar further submits that, in response to a motion in limine, Zemco altered its position to argue that the December 7 letter was the agreement. Navistar now claims that Zemco has returned to its former position that the discussions during the summer meetings were the agreement and that the December writing is simply a memorialization of that agreement. Navistar has not characterized Zemco's position correctly. Although the district court ultimately rejected Zemco's argument that the first paragraph set forth cooperation as consideration for Navistar's commitment to purchase parts and remaining material, it correctly ruled that Zemco had the right to use the late summer conversations to explain the December 7 letter if there was an ambiguity in the contract.